

Brian E. Farnan
302-777-0336
bfarnan@farnanlaw.com

April 9, 2018

**VIA E-FILE – FILED UNDER SEAL**

The Honorable Leonard P. Stark
United States District Judge
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

**Re:** *Wi-LAN Inc. v. VIZIO, Inc.*, C.A. No. 15-cv-788-LPS

Dear Chief Judge Stark:

Wi-LAN respectfully requests the Court issue the following two orders:

1. **VIZIO shall provide complete responses to all interrogatories served by Wi-LAN, including any additional interrogatories (9-15) served by Wi-LAN.**
2. **VIZIO shall produce unredacted versions of its agreements with Hulu.**

On April 29, 2016, Wi-LAN served its first set of specific interrogatories on VIZIO, which included eight interrogatories. Ex. A. On June 21, 2016, VIZIO served its objections and responses. Ex. B. The first interrogatory requested the facts VIZIO contends support its affirmative defenses. VIZIO has counted each affirmative defense as a separate subpart, and on that basis has refused to substantively respond to interrogatories 4-8[1] (*Id.* at 5), alleging that Wi-LAN has exceeded the 15 specific interrogatories limit provided by the Court's scheduling order. D.I. 21 at 5. Wi-LAN disagrees and seeks complete responses to the 15 specific interrogatories to which it is entitled. This discovery will allow the parties to narrow the disputed issues for trial.

Fed. R. Civ. P. 33(a)(1), provides that unless otherwise stipulated or ordered by the court, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Courts have struggled to define what constitutes "discrete subparts," and to apply it when trying to determine whether a party has exceeded the permissible number of interrogatories. *See, e.g., Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016) (Circuit Judge William C. Bryson, sitting by designation, discussing the issue at length, including the various approaches that courts have applied in attempting to resolve disputes). Similarly, courts[2] have disagreed as to whether an interrogatory that inquiries into the legal and factual basis for a defendant's affirmative defenses constitutes one interrogatory or a separate interrogatory for each affirmative defense. *Compare Jacks v. Directsat USA, LLC*, No. 10 C 1707, 2011 WL 382858, at *2 (N.D. Ill. Feb. 1, 2011) (treating interrogatory inquiring into affirmative defenses as one interrogatory because affirmative defenses concern a common theme) *with Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 3829134, at *2 (N.D. Ill. June 30, 2005)

---

[1] And by extension any further interrogatories (9-15) that Wi-LAN intends to serve.
[2] Wi-LAN is not aware of authority from this Court on the issue, nor any controlling authority from a higher court, and VIZIO has provided none despite Wi-LAN's repeated requests.

(treating interrogatory inquiring into affirmative defenses as a separate interrogatory for each affirmative defense). If there is one thing courts seem to agree on, it is that there is no formulaic approach and that the issue should be decided on a case-by-case basis.

There are sound reasons for treating Interrogatory No. 1 as a single interrogatory, instead of 11 separate interrogatories, as VIZIO contends. For example, as Judge Bryson discusses, courts should temper their analysis by considering a pragmatic approach that asks if an interrogatory "threatens the purpose of Rule 33 by combining into one interrogatory several lines of inquiry that should be kept separate." *Erfindergemeinschaft*, 315 F.R.D. at 196. Wi-LAN's first interrogatory poses no such threat.

Other pragmatic considerations also support Wi-LAN's request. Contention interrogatories inquiring into the basis of affirmative defenses generally advance the orderly pretrial development of the case. *C & N Corp. v. Kane*, No. 12-C-0257, 2013 WL 74366, at *3 (E.D. Wis. Jan. 7, 2013). They allow the plaintiff to determine quickly which affirmative defenses may have merit and need to be taken seriously, and which are mere place-holders intended only to preserve the defendant's ability to pursue the defense if facts that support it turn up later. *Id.* The use of contentions interrogatories is particularly appropriate in this case where VIZIO has plead almost every available affirmative defense. *Id.* If VIZIO believes that each of the eleven affirmative defenses has merit, it owes Wi-LAN an explanation beyond the bare assertion of it in its responsive pleading. *Id.* And this necessary disclosure should not come at the expense of Wi-LAN's inability to seek discovery on other issues through additional interrogatories. *Id.* Indeed, in Delaware affirmative defenses do not have to meet the heightened pleading requirements of *Iqbal/Twombly*, and, as a result, it is basically impossible to strike affirmative defenses or request a more definitive statement. *See, e.g., Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 580-583 (D. Del. 2015) ("Motions for a more definite statement are generally viewed with disfavor, particularly 'where the information sought by the motion could easily he obtained by discovery.'"). VIZIO's listing of its affirmative defenses in its Answer provides no information from which Wi-LAN can determine the factual basis for the defense. D.I. 17 at 6-8. Given the low pleading standards discussed above, siding with VIZIO's interpretation invites defendants to include as many affirmative defenses as possible in order to force plaintiffs to choose—without any information other than a bare-bones pleading—which defenses might be legitimate and worth pursuing through written discovery. Moreover, many of the affirmative defenses cannot be investigated through other written discovery, as they do not lend themselves to requests for production or admission. Nor is the information usually available from a corporate representative in a deposition. For these reasons, even where courts have found that an interrogatory seeking the factual basis for each defense would normally be counted separately and, therefore, the plaintiff would have exceeded its allotted number of interrogatories, courts have still required the defendant to answer the interrogatory in full as though it were a single interrogatory. *See, e.g., C & N*, 2013 WL 74366, at *3 ("To the extent that each affirmative defense reflects a separate theory of defense, it seems that a request for the factual and legal basis for such a defense should be viewed as a separate interrogatory. But this does not mean that a defendant should not be ordered to answer it anyway.").

Wi-LAN will be severely prejudiced were the Court to adopt VIZIO's count of the interrogatories. There is no authority from this Court or District to suggest that VIZIO's argument

is the law here. Wi-LAN and its counsel, who both have significant experience in the District, pursued discovery under the rules and customs of the District, as evidenced by the fact that none of the other related defendants (SEC and OnCorp) who were served with identical interrogatories raised this objection. VIZIO's position effectively limits Wi-LAN to three interrogatories and thereby precludes Wi-LAN from taking written discovery on issues like non-infringing alternatives (interrogatory no. 8) for example, which are traditionally explored through interrogatories, as they are not generally amenable to other forms of written discovery.

Alternatively, Wi-LAN respectfully requests that the Court treat this as a Motion for Leave to serve interrogatories in excess of the 15 specific interrogatory limit, which is within the Court's broad discretion to manage discovery, as contemplated by Fed. R. Civ. P. 33, which provides that "[l]eave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." In summary, Wi-LAN seeks an order compelling VIZIO to answer all of the interrogatories Wi-LAN previously served, and that also makes clear that Wi-LAN has the right to serve further interrogatories (9-15) if it chooses.

Wi-LAN also seeks production of unredacted agreements between VIZIO and Hulu. VIZIO has redacted the agreements to remove information that it (and Hulu) unilaterally deemed irrelevant. *See* Ex. C at 1-2 (Email Garza to Perkins, Dec. 7, 2017) and (Email Hwang to Perkins, Nov. 9, 2017); Ex. D (VIZIO055477, example of redactions). But it is improper to redact "irrelevant" information from an otherwise relevant document. *See Delaware Display Grp. LLC v. Lenovo Grp. Ltd., Lenovo Holding Co.*, No. CV 13-2108-RGA, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) (holding that "a party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant. … If [redacting party] felt the Protective Order was inadequate, they could have moved to modify it."); Fed. R. Civ. P. 34(b)(2)(E) ("Unless otherwise stipulated or ordered by the court … [a] party must produce documents as they are kept in the usual course of business."). Despite repeated requests, neither VIZIO nor Hulu ever provided any authority from this Court or District permitting the redactions. Nor did VIZIO or Hulu identify any harm in producing the "irrelevant" information. This is not surprising because the producing party is ordinarily "not harmed by producing irrelevant information … which is subject to a protective order restricting its dissemination and use," making redaction both unnecessary and disruptive, as demonstrated by the present motion. *Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 2:08-CV-1112, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010).

Moreover, in the present case, the redacted information is, indeed, relevant. The '250 patent relates to adaptive bit rate streaming, as performed in the accused products by pre-installed applications such as Hulu and Netflix. Thus, terms of the agreements between Defendants and these third-party application developers are highly relevant. The relevant terms of these agreements include, among others, the monies exchanged between the parties for this technology. Such information is at least relevant to damages. Despite its clear relevance, VIZIO and Hulu have redacted this information from the produced agreements. *See, e.g.,* Ex. D at Exhibit B ("Fee Terms"). Notably, VIZIO's agreements with Netflix, who is similarly situated to Hulu, were produced unredacted.

For these reasons, Wi-LAN respectfully requests that the Court order VIZIO to produce unredacted versions of its agreements with Hulu.

                                                               Respectfully submitted,

                                                               */s/ Brian E. Farnan*

                                                               Brian E. Farnan

cc: Counsel of Record (via E-File)