# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

JACK B. BLUMENFELD
(302) 351-9291
jblumenfeld@mnat.com

April 11, 2018 - Original Filing Date
April 18, 2018 - Redacted Filing Date

REDACTED - PUBLIC VERSION

The Honorable Leonard P. Stark    *VIA ELECTRONIC FILING*
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

      RE:   *Wi-Lan Inc. v. VIZIO, Inc.*
            C.A. No. 15-788 (LPS)

Dear Chief Judge Stark:

      I write on the behalf of non-party Hulu, LLC seeking the Court's permission to respond to the portion of Wi-LAN's April 9 motion to compel against VIZIO that relates to third-party Hulu. Ultimately, Wi-LAN seeks <u>Hulu's</u> confidential information that Hulu declined to provide—because it is not relevant and contains highly-sensitive Hulu confidential business information via subpoena. Wi-LAN improperly seeks this information in a request to VIZIO and this Court. Vizio should not be compelled to provide the requested Hulu information.

      **Hulu provided discovery on the functionality of its product.** Wi-LAN served a third-party subpoena on Hulu almost two years ago, in May 2016. *See* Ex. A (subpoena). Wi-LAN's counsel told Hulu that the functionality of Hulu's software was at issue in this lawsuit and requested information on the operation of Hulu's product. *See* Ex. B (Garza Dec.) ¶ 4.[1]

      Hulu took its obligations under the subpoena seriously and provided extensive information about the technical aspects of Hulu's product. In particular, (i) in August 2016, Hulu provided technical documentation on the features identified by Wi-LAN; (ii) in October 2016, Hulu allowed Wi-LAN to review Hulu's source code; and (iii) in November 2017, Hulu made available its Head Engineer from its Beijing, China office for a deposition in California. *See* Ex. B ¶ 5. That deposition lasted about seven hours. *See id.*

      **Wi-LAN demands wide-ranging, non-technical documents and information.** Despite Hulu's fulsome response, Wi-LAN continues to expand its initial request. Wi-LAN has insisted that it is entitled to documents and information that have nothing to do with the functionality of the Hulu product and far exceeds the scope of permissible, proportionate discovery against a non-party. *See*

---

[1]   Wi-LAN stated in an August 2016 email: "So what we need from Hulu is documentation and source code that shows the TV's interaction with the Hulu servers. This interaction includes, but is not limited to, the measurement of the data rate of the received multimedia packets from those servers. And then the algorithm used by the decision engine that applies that data rate measurement to determine how to adapt the segments requested in the HTTP GET requests (i.e., either higher or lower bitrates), also by way of example."

The Honorable Leonard P. Stark
April 11, 2018
Page 2

Ex. B ¶ 6 (Wi-LAN demanded "Hulu's internal financial documents, including, but not limited to, profit and cost information, profit and revenue projections, internal forecasting, and related information."). Wi-LAN's subpoena requests, *inter alia*:

- **RFP No. 9:** Agreements between Hulu and any Manufacturer or their suppliers related to the streaming of media data, including but not limited to streaming video over the internet. (Note: Hulu is an internet video-streaming company, so <u>all</u> of its contracts are "related to the streaming of media data.").
- **RFP No. 11:** Documents showing the patents owned by, licensed by, or assigned to Hulu that are related to the implementation, performance, configuration, or control of Adaptive streaming or receiving or processing information concerning Adaptive Streaming.
- **RFP No. 16:** Any documents related to the demonstration, sales presentation, and or sales or marketing efforts regarding any customer evaluation module or apparatus containing functionality for the implementation or control of Adaptive Streaming or receiving or processing information concerning Adaptive streaming.

Ex. A at Attach. B. Although Hulu has readily provided information about the <u>functionality</u> of its product, it has consistently resisted producing <u>non-technical</u> information that is not needed to fully and fairly litigate the issues in this case.

**The redacted information at issue.** In November 2017, over a year after Wi-LAN received the redacted agreements from VIZIO, Wi-LAN complained about Hulu's redactions. *See* Ex. C (e-mail chain between Hulu and Wi-LAN) at 4-5. Hulu explained that its redactions contained highly sensitive business information and that Hulu did not intend to provide that information. *Id.* at 1-2. Hulu then addressed each redaction individually and explained how the redacted information was irrelevant to the lawsuit. *Id.* In short:

For the Content Distribution Agreement, Hulu redacted, as irrelevant:
- the precise "minimum spend" figure from § 6.2;
- the precise fee that VIZIO may charge Hulu in certain situations from § 7.4;
- section 12 (entitled "Data"), which covers how subscriber data and payment is managed;
- section 13 (entitled "Disclaimers, Exclusions, and Liability Limitations"), and the subsections for each of the items in the title;
- section 14 (entitled "Indemnification"), which explains the terms of VIZIO's and Hulu's indemnification obligations to each other;
- both (i) the precise payment from Hulu to VIZIO in relation to particular subscribers, and (ii) information on how subscriber data is managed, from Ex. B;
- the precise way that VIZIO shall use output protection from Ex. E.

For Amendment Two to the Agreement, Hulu redacted the precise "minimum spend" figure from ¶ 1.

For Amendment Five, Attachment 1, Hulu redacted, as irrelevant:
- the recurring fee payable to a VIZIO affiliate and how it is calculated from § 1.2.1;
- how fee information is tracked, and how subscriber data is managed from § 1.4;
- the precise minimum guarantee from § 1.5.2;
- the precise minimum advertising figure from § 1.6;
- bank routing information from § 2.3.

The Honorable Leonard P. Stark
April 11, 2018
Page 3

Id. at 1-2. Wi-LAN has not responded to Hulu's concerns on the merits nor has it moved to compel against Hulu. Instead, Wi-LAN has moved to compel the information from VIZIO, in this Court.

**The requested information is sensitive and irrelevant.** Hulu believes the terms of its contracts, like this one, contain highly sensitive business information. Ex. B ¶ 7. If these terms became public (even inadvertently), potential partners could use the information against Hulu in future negotiations. *Id.* Hulu has therefore sought to strike a balance between providing the requested information and protecting Hulu's confidential information that is irrelevant to the technical functionality at issue in the case.

Wi-LAN claims that the relevant terms of the agreements include "the monies exchanged between the parties for [adaptive-bit-rate-streaming] technology." Ltr. at 3. Not so. VIZIO does not pay Hulu (or vice versa) for adaptive-bit-rate-streaming technology. Rather, as shown in the agreements and Hulu's explanation for its redactions, the fees relate to (i) VIZIO's advertisement spending on Hulu (§ 6.2, Amendment Two ¶ 1, Amendment 5 §§ 1.5.2, 1.6); (ii) whether Hulu requests an out-of-cycle firmware upgrade (§ 7.4); (iii) whether VIZIO customers subscribe to Hulu's video-streaming service (Ex. B to agreement); and (iv) Google Cast (Attach. 5, § 1.2.1.). Wi-LAN has provided no way to link the figures redacted by Hulu to any sort of cognizable damages claim against VIZIO. And Wi-LAN has provided no justification whatsoever for the information redacted by Hulu related to customer data, disclaimers, exclusions, liability limitations, or indemnification. The redacted information is not relevant or proportional to Wi-LAN's claims in the lawsuit, and should be excluded from the scope of discovery. Rule 26(b)(1).

**Compared to VIZIO, Hulu has a superior interest in the confidentiality of the requested information.** Hulu does not know whether VIZIO contracts with many companies like Hulu or whether VIZIO shares Hulu's concerns about the confidentiality of this information. But Hulu certainly seeks to protect the confidentiality of this information—Hulu marked the agreement "Confidential," and required VIZIO to agree not to disclose or use the information for any outside purpose. *See* Agreement Wi-Lan Ex. D) § 11.1; Ex. A ¶ 8. Even though Hulu has informed Wi-LAN of that, Ex. C at 1-2, Wi-LAN seeks to use this Court to circumvent Hulu's defense of its confidential information. If Wi-LAN wants to challenge the sufficiency of Hulu's response, it should do through a third-party motion to compel against Hulu.

**Conclusion.** The Court should deny the portion of Wi-LAN's motion to compel related to Hulu documents. Hulu should not be required to provide this information to Wi-LAN, through VIZIO or otherwise. To the extent that Wi-LAN wishes to challenge Hulu's response to the subpoena, it should do so by directly challenging Hulu's response, rather than attempting to obtain the information through VIZIO.

                                            Respectfully,

                                            */s/ Jack B. Blumenfeld*

                                            Jack B. Blumenfeld (#1014)

JBB/dlw
Enclosures
cc:     Clerk of Court (Via Hand Delivery; w/ encl.)
         All Counsel of Record (Via Electronic Mail; w/ encl.)