# Exhibit A

 CT Corporation

**Service of Process
Transmittal**
05/11/2016
CT Log Number 529150801

TO:     Beckie Law, Executive Assistant to Chad Ho
        Hulu, LLC
        2500 Broadway Ste 200
        Santa Monica, CA 90404-3071

RE:     **Process Served in California**

FOR:    Hulu, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | WI-LAN INC., Pltf. vs. VIZIO, INC et al., Dts. // To: Hulu, LLC |
| **DOCUMENT(S) SERVED:** | Check, Subpoena, Attachment(s) |
| **COURT/AGENCY:** | Delaware District - UNITED STATES DISTRICT COURT, DE<br>Case # 115CV00788LPSCJB |
| **NATURE OF ACTION:** | Subpoena - Business records - Pertaining to the benefits and/or advantages of the particular implementation or control of Adaptive Streaming |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/11/2016 at 14:40 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | 05/24/2016 at 09:00 a.m. (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | PREMIER ATTORNEY SERVICE, INC<br>1301 WEST SECOND STREET, SIflTE 204<br>LOS ANGELES, CA 90026<br>213-481-7334 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day |
| | Image SOP |
| | Email Notification,  Chad Ho  Chad@hulu.com |
| | Email Notification,  Karen Huoth  karen.huoth@hulu.com |
| | Email Notification,  AJ Bedel  aj.bedel@hulu.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**PREMIER ATTORNEY SERVICE, INC.**
1301 WEST SECOND STREET, SUITE 204
LOS ANGELES, CA 90026
(213) 481-7334

JPMORGAN CHASE BANK, N.A.
132 EAST COLORADO BLVD.
PASADENA, CA 91105

20357

90-7162/3222

5/9/2016

PAY TO THE
ORDER OF      HULU, LLC                                              $   **46.00

Forty-Six and 00/100************************************************************************************************   DOLLARS

MEMO

11837                    SECURITY FEATURES INCLUDED. DETAILS ON BACK.          AUTHORIZED SIGNATURE

---

PREMIER ATTORNEY SERVICE, INC.                WWW.COMPUCHECKS.COM 888-358-5561          20357

HULU, LLC                                          5/9/2016

11837                                                            46.00

CHECKING - CHASE    11837                                          46.00

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| WI-LAN INC., | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   1:15-cv-00788-LPS-CJB, et al. |
| VIZIO, INC et al., | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                          Hulu, LLC  2500 Broadway FL2, Santa Monica, CA 90404

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

                         See Attachment A.

| Place: VERITEXT  2049 Century Park East Suite 2450<br>Los Angeles, CA 90067 | Date and Time:<br>                    05/24/2016 9:00 am |
|---|---|

The deposition will be recorded by this method:     Videographic and stenographic means.

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

                         See Attachment B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    05/09/2016

                    *CLERK OF COURT*
                                                      OR
                                                              /s/Terry Saad
    _____        _____
        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
    WI-LAN Inc. _____ , who issues or requests this subpoena, are:
    Terry Saad, 2200 Ross Avenue, Suite 4500W, Dallas, Texas 75201, (214) 785-6670.

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or.commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

1.     "Hulu," "you," "your," or "yours" means Hulu LLC. and any of its owners, affiliates, and subsidiaries, and related companies, and all past and present directors, officers, employees, agents, consultants, attorneys and others purporting to act on its behalf.

2.     The term "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic or otherwise recorded matter, however produced or reproduced, and all "writings," as defined in Federal Rule of Evidence 1001, of any nature, whether on paper, magnetic tape, electronically recorded or any other information storage means, including film and computer memory storage devices; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.

3.     Unless otherwise stated, the timeframe for these Topics are from 2009 until the present.

4.     The singular includes the plural and the plural includes the singular.

5.     The term "AND" should be construed as "AND/OR." as appropriate, to extend the broadest possible coverage based on the context of the particular request.

6.     The term "relate," "relates," "related to," or "relating to" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting on, evidencing, describing or otherwise relating to the subject matter.

7.     The term "source code" should include all non-compiled code (e.g., firmware and

code for embedded processors), including but it not limited to: Application scripts, DSP code, microcontroller code, co-processor code, microprocessor code, driver code, API code, and hardware description code (e.g., Verilog and VHDL).

8. The term "simulation" should include, but it not limited to: design simulation, test bench, evaluation bench, or FPGA evaluation.

9. "Vizio" means Vizio Inc., its predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

10. "Sharp" means Sharp Corporation and Sharp Electronics Corporation, their predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

11. "ON Corp" means On Corp US, Inc. and On Corporation Inc., their predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

12. "Manufacturer" means Vizio, Sharp, and On Corp.

13. Manufacturer's Devices means any digital television set, SoC/processor/chipset provided to any Manufacturer (or any supplier for use in any Manufacturer's products including but not limited to boards provided by AmTRAN Technology Co. Ltd., Top Victory Investments Ltd., Wistron Corporation, and Hon Hai Precision Industry Co., Ltd.), including but not limited to processor/chipsets from Mediatek Inc., MStar Semiconductor, Inc., Broadcom Ltd., or Sigma Designs, Inc. of any Manufacturer.

14. The term "Adaptive Streaming" means adjusting rates of streaming media data or dynamic or adaptive streaming of media data including but not limited to Dynamic Adaptive Streaming over HTTP (DASH).

15. The term "Streaming Service Provider" means a service such as Netflix, Amazon,

Google Play Movies, Hulu, etc., that distributes digital television content via a network, such as

the public Internet, to a receiver, such as a personal computer, television, Smart TV, DVD or Blu-

ray player, smartphone, tablet, a dedicated media player, and/or equivalents of any of the

foregoing, with built in or installed software, such as an application program, having capability for

communicating with a content server via a network, such as the Internet, for playing multimedia

in a streaming format.

## INSTRUCTIONS

1.      One or more representatives may be produced at deposition for one or more topics.

2.      If in responding to these topics you claim any ambiguity in either a topic or a

definition or instruction applicable thereto, identify in advance of the deposition the language you

consider ambiguous and state the interpretation that You are using in preparing your witness(es)

to testify.

## TOPICS

**TOPIC NO. 1:**

Documents produced in response to the subpoena to produce documents, which was issued

to Hulu concurrently with this subpoena (see Attachment B), including the business record and/or

authenticity foundation for any such Documents.

**TOPIC NO. 2:**

How any Manufacturer's device implements, performs, or controls Adaptive Streaming

including a description of source code showing how this functionality is implemented and when

any such code is executed.

**TOPIC NO. 2:**

How Hulu implements, performs, or controls Adaptive Streaming to any Manufacturer's

devices including a description of source code showing how this functionality is implemented and when any such code is executed.

**TOPIC NO. 3:**

How any SoC/processor/chipset in any Manufacturer's product, including but not limited to Circuit Boards containing any SoC/processor/chipset, implements Adaptive Streaming, including a description of source code showing how this functionality is implemented and when any such code is executed.

**TOPIC NO. 4:**

How the interface between any streaming video provider and any Manufacturer device, including but not limited to processor/chipsets digital television sets is implemented.

**TOPIC NO. 5:**

How any simulation, testing, or de-bug (including, but not limited to code simulations, mathematic model simulations (e.g., MATLAB simulations, RTL simulations, FPGA simulations, and transistor-level simulations) of the implementation, performance, control, or configuration of Adaptive Streaming related to any Manufacturer's Devices.

**TOPIC NO. 7:**

How any and all APIs or drivers associated with Manufacturer's Devices, implements, performs, configures, or controls the process of Adaptive Streaming.

**TOPIC NO. 8:**

Software or hardware design documentation, requirements specifications, functional specifications, and/or test plans related to how Manufacturer's Devices implements, performs, configures, or controls Adaptive Streaming.

**TOPIC NO. 9:**

How much Hulu charges each Manufacturer or how much each Manufacturer charges Hulu for the purchase, use, implementation, or sale of any Manufacturer's Devices.

**TOPIC NO. 10:**

Royalty rates and revenue Hulu receives from each Manufacturer or each such Manufacturer's suppliers for the use of any intellectual property implicated by the manufacture, sale, implementation, or use of any Manufacturer's Devices.

**TOPIC NO. 11:**

The contents and terms of any agreement between Hulu and any Manufacturer or their suppliers related to the purchase, sale, or use of any Manufacturer's Devices that controls or implements Adaptive Streaming.

**TOPIC NO. 12:**

The contents and terms of any agreements between Hulu and any Manufacturer or their suppliers related to the use of intellectual property implicated by the purchase, sale, or use of any Manufacturer's Devices.

**TOPIC NO. 13:**

The patents owned by, licensed by, or assigned to, Hulu that are related to the implementation or control of Adaptive Streaming.

**TOPIC NO. 14:**

The terms and conditions of any agreement between Hulu and others that license the use of patents related to the implementation or control of Adaptive Streaming.

**TOPIC NO. 15:**

The royalty rate(s) Hulu receives for licensing of its patents related to the implementation

or control of Adaptive Streaming.

**TOPIC NO. 16:**

Commitments or obligations arising from any agreement between Hulu, on the one hand, and Manufacturer, or an affiliate, predecessor-in-interest, or successor-in-interest thereof, on the other hand, to offer licenses under certain terms and conditions at any time to U.S. Patents related to the implementation or control of Adaptive Streaming and/or other video processing functionality.

**TOPIC NO. 17:**

Communications between Hulu and others pertaining to U.S. Patent No. 6,490,250, including communications reflecting any actual or proposed licensing arrangement concerning this patent.

**TOPIC NO. 18:**

Any demonstration, sales presentation, and/or sales or marketing efforts regarding any prototype, customer evaluation module or apparatus containing functionality for the implementation or control of Adaptive Streaming.

**TOPIC NO. 19:**

The benefits and/or advantages of the particular implementation or control of Adaptive Streaming incorporated in any Manufacturer's Devices, including but not limited to SoC/processor/chipsets incorporated into Manufacturer's Devices.

# ATTACHMENT B

## DEFINITIONS

1.      "Hulu," "you," "your," or "yours" means Hulu LLC. and any of its owners, affiliates, and subsidiaries, and related companies, and all past and present directors, officers, employees, agents, consultants, attorneys and others purporting to act on its behalf.

2.      The term "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic or otherwise recorded matter, however produced or reproduced, and all "writings," as defined in Federal Rule of Evidence 1001, of any nature, whether on paper, magnetic tape, electronically recorded or any other information storage means, including film and computer memory storage devices; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.

3.      Unless otherwise stated, the timeframe for these Requests are from 2009 until the present.

4.      The singular includes the plural and the plural includes the singular.

5.      The term "AND" should be construed as "AND/OR." as appropriate, to extend the broadest possible coverage based on the context of the particular request.

6.      The term "relate," "relates," "related to," or "relating to" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting on, evidencing, describing or otherwise relating to the subject matter.

7.      The term "source code" should include all non-compiled code (e.g., firmware and code for embedded processors), including but it not limited to: Application scripts, DSP code, microcontroller code, co-processor code, microprocessor code, driver code, API code, and

hardware description code (e.g., Verilog and VHDL).

8.      The term "simulation" includes, but is not limited to: software simulation (including mathematical model simulation such as MATLAB), design simulation, test bench, evaluation bench, evaluation module, or FPGA evaluation.

9.      "Vizio" means Vizio Inc. its predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

10.     "Sharp" means Sharp Corporation and Sharp Electronics Corporation, their predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

11.     "ON Corp" means On Corp US, Inc. and On Corporation Inc., their predecessors and successors, past and present parents, divisions, subsidiaries, affiliates, and related companies.

12.     "Manufacturer" means Vizio, Sharp, and On Corp.

13.     "Manufacturer's Devices" means any digital television set, SoC/processor/chipset provided to any Manufacturer (or any supplier for use in any Manufacturer's products including but not limited to boards provided by AmTRAN Technology Co. Ltd., Top Victory Investments Ltd., Wistron Corporation, and Hon Hai Precision Industry Co., Ltd.), including but not limited to processor/chipsets from Mediatek Inc., MStar Semiconductor, Inc., Broadcom Ltd., or Sigma Designs, Inc. of any Manufacturer.

14.     The term "Adaptive Streaming" means adjusting rates of streaming media data or dynamic or adaptive streaming of media data including but not limited to Dynamic Adaptive Streaming over HTTP (DASH).

15.     The term "Streaming Service Provider" means a service such as Netflix, Amazon, Google Play Movies, Hulu, etc., that distributes digital television content via a network, such as the public Internet, to a receiver, such as a personal computer, television, Smart TV, DVD or Blu-ray player, smartphone, tablet, a dedicated media player, and/or equivalents of any of the foregoing, with built in or installed software, such as an application program, having capability for

communicating with a content server via a network, such as the Internet, for playing multimedia in a streaming format.

## INSTRUCTIONS

1.      As used in these Requests for Production, the singular shall include the plural, and the past tense shall include the present tense, and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" shall mean "any and all;" the word "including" shall mean "including without limitation," so as to be most inclusive.

2.      Documents produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to correspond with the categories in the request.

3.      If any Document is withheld under a claim of privilege or immunity from production, identify that document as required by Federal Rule of Civil Procedure 26(b)(5).

4.      These requests are continuing, so that if after responding and producing Documents, You acquire or locate any additional Documents falling within the scope of any of the requests herein, You are to produce such additional Documents promptly.

## REQUESTS FOR PRODUCTION

**RFP NO. 1:**

Documents describing any algorithms, methods, and/or implementations of Adaptive Streaming to Manufacturer's Devices. Documents sought herein include, but are not limited to: design manuals, datasheets, technical briefs, white papers, developer guides, and specifications including functional and physical block diagrams, flow charts, or any writing describing the theory of operation.

**RFP NO. 2:**

All source code related to how any SoC/processor/chipset incorporated in any Manufacturer's Devices implements, performs, configures, controls, or receives information

pertaining to Adaptive Streaming, including source code showing how this functionality is implemented and when any such video streaming code is executed.

**RFP NO. 3:**

All documents describing the interface between any streaming video provider and any Manufacturer's Devices.  Documents sought herein include, but are not limited to: reference manuals, datasheets, technical briefs, white papers, developer guides, and specifications including functional and physical block diagrams, flow charts, or any writing describing the theory of operation.

**RFP NO. 4:**

Documents describing simulation, testing, or de-bug of the implementation, performance, configuration, or control of Adaptive Streaming on any Manufacturer's Devices including any SoC/processor/chipset or any video board incorporated in any Manufacturer's Devices. Documents sought herein include, but are not limited to: reference manuals, user manuals, datasheets, technical briefs, white papers, developer guides, user guides, and specifications including functional and physical block diagrams, flow charts, or any writing describing the theory of operation.

**RFP NO. 5:**

All documentation related to how any of any Manufacturer's Devices receives, controls, or implements (1) any streaming media data and/or (2) adjusting rates of streaming media data or dynamic or adaptive streaming of media data. Documents sought herein include, but are not limited to: software or firmware code, reference manuals, datasheets, technical briefs, white papers, developer guides, and specifications including functional and physical block diagrams, flow charts or any writing describing the theory of operation.

**RFP NO. 6:**

All API source code and documentation related to how any Manufacturer's Devices implements, performs, configures, or controls Adaptive Streaming or receiving or processing

information concerning Adaptive Streaming.

**RFP NO. 7:**

All driver source code and/or driver interface code and documentation related to how any Manufacturer's Devices, implements, performs, configures, or controls Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 8:**

All software design documentation, software requirements specifications, software functional specifications, and/or software test plans related to how any Manufacturer's Devices implements, performs, or configures Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 9:**

Agreements between Hulu and any Manufacturer or their suppliers related to the streaming of media data, including but not limited to streaming video over the internet.

**RFP NO. 10:**

Agreements between Hulu and any Manufacturer or their suppliers related to the use or licensing, of intellectual property implicated by the purchase, sale, or use of any Manufacturer's Devices.

**RFP NO. 11:**

Documents showing the patents owned by, licensed by, or assigned to, Hulu that are related to the implementation, performance, configuration, or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 12:**

Agreements between Hulu and others that license the use of patents are related to the implementation, performance, configuration, or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 13:**

Documents showing or reflecting the royalty rate(s) Hulu receives for licensing of any patents related to the implementation, performance, configuration, or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 14:**

Documents showing or reflecting commitments or obligations arising from any agreement between Hulu, on the one hand, and Manufacturer, or an affiliate, predecessor-in-interest, or successor-in-interest thereof, on the other hand, to offer licenses under certain terms and conditions at any time to U.S. Patents related to the implementation or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 15:**

Documents relating to communications between Hulu and others pertaining to U.S. Patent No. 6,490,250, including communications reflecting any actual or proposed licensing arrangement concerning this patent.

**RFP NO. 16:**

Any documents related to the demonstration, sales presentation, and/or sales or marketing efforts regarding any customer evaluation module or apparatus containing functionality for the implementation or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming.

**RFP NO. 17:**

Any documents related to the benefits and/or advantages of the particular implementation or control of Adaptive Streaming or receiving or processing information concerning Adaptive Streaming incorporated into any Manufacturer's Devices.

**RFP NO. 18:**

Documents and correspondence exchanged between Hulu and any Manufacturer.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| Wi-LAN, Inc.,<br><br>     Plaintiff,<br><br>v.<br><br>VIZIO, Inc. et al.,<br><br>     Defendants. | C.A. No. 15-788-LPS-CJB |

## DECLARATION OF ANTHONY M. GARZA

I, Anthony M. Garza, declare as follows:

1.     I am counsel for Hulu, LLC. I have personal knowledge of the following facts and statements in this declaration, and, if called as a witness, I could and would testify competently thereto. I submit this declaration in opposition to Wi-LAN's letter brief requesting that VIZIO produce Hulu confidential business information, which has been redacted from agreements between Hulu and VIZIO.

2.     Exhibit A is a true and correct copy the subpoena served by Wi-LAN on Hulu in May 2016.

3.     Exhibit C is a true and correct copy of an email chain between myself (representing Hulu) and attorneys for Wi-LAN and VIZIO, sent between November 2017 and January 2018.

4.     On August 4, 2016, counsel for Wi-LAN (Patrick Conroy) sent counsel for Hulu (Steven Callahan) the email excerpted below. This email (and Wi-LAN's early

1

discussions with Hulu) focused on how the accused televisions interacted with the Hulu system:

| | |
|---|---|
| **From:** | Patrick Conroy <pconroy@bcpc-law.com> |
| **Sent:** | Thursday, August 04, 2016 6:19 PM |
| **To:** | Steven Callahan |
| **Cc:** | Anthony Garza; Terry Saad |
| **Subject:** | RE: Hulu Subpoena |
| **Attachments:** | WiLAN-Sharp (Dkt 70) Proposed Updated Protective Order.pdf; Proposed Amended Protective Order - Plaintiff's Redline.docx |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Steve:

Thank you for the call today. The relevant patent is s United States Patent No 6,490,250.

Also, please find attached the Protective Order in the case. A Protective Order with Source Code Provisions is currently being negotiated with Netflix, and I attached that current redline as well.

With respect to the technical documents and source code that we are seeking from Hulu, a good summary of the relevant technology can be found in materials related to the DASH standard.

So what we need from Hulu is documentation and source code that shows the TV's interaction with the Hulu servers. This interaction includes, but is not limited to, the measurement of the data rate of the received multimedia packets from those servers. And then the algorithm used by the decision engine that applies that data rate measurement to determine how to adapt the segments requested in the HTTP GET requests (i.e., either higher or lower bitrates), also by way of example.

Thank you.

5.     In August 2016, Hulu produced technical documentation on the features identified by Wi-LAN (HULU1-134). In October 2016, Hulu produced source code at my law firm's offices in Dallas. Wi-LAN sent a source-code reviewer (Jason Spotts) who reviewed the code for approximately four hours. In November 2017, Wi-LAN deposed Hulu's Head Engineer from its Beijing, China, office—Frank Lan. Hulu made Mr. Lan available in California for Wi-LAN's convenience. The deposition began around 9 a.m. and concluded around 4:30 p.m.

6.      After reviewing Hulu's source code, Wi-LAN began demanding other documents that had nothing to do with the functionality of Hulu's services. Counsel for Wi-LAN sent the following email to Counsel for Hulu on January 24, 2017:

Steve:

Thank you. I can't imagine that all of the relevant technical documents has been produced, and Plaintiff is entitled to Hulu's internal financial documents, including, but not limited to, profit and cost information, profit and revenue projections, internal forecasting, and related information. I will get you a list of the accused products, so that we can get a Declaration accomplished, but please confirm the relevant information will be produced by this Monday.

Much appreciated.

7.      The terms of Hulu's contracts, including the contracts at issue here (the Content Distribution Agreement between Hulu and VIZIO, and amendments thereto) contain highly sensitive business information. If the terms of the contracts at issue became public, even inadvertently, future potential partners could use the information against Hulu in future negotiations.

8.      Hulu seeks to protect the confidentiality of its contracts. The contract at issue here is marked "Confidential," and Hulu required VIZIO to agree not to disclose or use the information for any outside purpose. *See* Agreement (attached as Ex. D to Wi-LAN's letter brief) § 11.1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 10, 2018, in Dallas, Texas.


ANTHONY M. GARZA

3

# Exhibit C

**Anthony Garza**

| | |
|---|---|
| **From:** | Anthony Garza |
| **Sent:** | Tuesday, January 23, 2018 5:35 PM |
| **To:** | 'James Perkins' |
| **Subject:** | FW: WiLAN -- call yesterday |

Mr. Perkins-

I write on behalf of Hulu, LLC. Hulu received Wi-LAN's subpoena in May 2016, responded to the subpoena with objections and documents, produced source code for inspection, and tendered a corporate representative for deposition. Hulu has met its obligations under the subpoena. Responding to your questions:

- ████████████████████████████████████████████████████████████████

- We identified the content of our redactions to the VIZIO agreement in my email dated December 7, 2017 (the email is included below, for your convenience). As we stated in that email, the data we redacted is not relevant to the litigation and do not relate to adaptive-bit-rate streaming. You have not shown otherwise. Contracts like these contain highly sensitive business information to Hulu, and we do not intend to produce portions of the contract that have no bearing to the lawsuit between Wi-LAN and VIZIO.

Anthony M. Garza
Charhon Callahan Robson & Garza
(469) 587-7242

---

**From:** Anthony Garza
**Sent:** Thursday, December 07, 2017 7:54 AM
**To:** 'James Perkins' <JPerkins@bcpc-law.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Mr. Perkins-

The redactions are limited and appropriate given the scope of Wi-LAN's lawsuit against VIZIO. The data we redacted is not relevant to the litigation, and do not relate to adaptive-bit-rate streaming. Contracts like these contain highly sensitive business information to Hulu, and we do not intend to produce portions of the contract that have no bearing to the lawsuit between Wi-LAN and VIZIO.

On the Content Distribution Agreement:
- In § 6.2, we redacted out the precise "minimum spend" figure. That figure is not relevant to the litigation.
- In § 7.4, we redacted out the precise fee that VIZIO may charge Hulu in certain situations. That figure is not relevant to the litigation.

- Section 12 is entitled "Data," and covers how subscriber data and payment is managed. This information is not relevant to the litigation.
- Section 13 is entitled "Disclaimers, Exclusions, and Liability Limitations," and has subsections for each of the items in the title. This information is not relevant to the litigation.
- Section 14 is entitled "Indemnification," and explains the terms of VIZIO's and Hulu's indemnification obligations to each other. This information is not relevant to the litigation.
- Exhibit B redacts (i) the precise payment from Hulu to VIZIO in relation to particular subscribers, and (ii) information on how subscriber data is managed. This information is not relevant to the litigation.
- Exhibit E redacts out the precise way that VIZIO shall use output protection. This information is not relevant to the litigation.

On Amendment Two to the Content Distribution Agreement:
- In ¶ 1, we redacted out the precise "minimum spend" figure. That figure is not relevant to the litigation.

On Amendment Five to the Content Distribution Agreement, Attachment 1:
- In § 1.2.1, we redacted out the recurring fee payable to VIS and how it is calculated. That payment is not relevant to the litigation.
- In § 1.4, we redacted how fee information is tracked, and how subscriber data is managed. That is not relevant to the litigation.
- In § 1.5.2, we redacted out the precise minimum guarantee. That figure is not relevant to the litigation.
- In § 1.6, we redacted out the precise minimum advertising figure. That figure is not relevant to the litigation.
- In § 2.3, we redacted bank routing information. That is not relevant to the litigation.

In light of the scope of the litigation, Hulu does not agree to to un-redact the portions listed above. Feel free to call me if you have any further questions or would like to discuss.

Anthony M. Garza
Charhon Callahan Robson & Garza
(469) 587-7242

Anthony M. Garza
Charhon Callahan Robson & Garza
(469) 587-7242

---

**From:** James Perkins [mailto:JPerkins@bcpc-law.com]
**Sent:** Tuesday, December 05, 2017 10:13 AM
**To:** Anthony Garza <agarza@ccrglaw.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Anthony:

Do you have an update for us?

Thanks,

James R. Perkins
**BRAGALONE CONROY** PC
214.785.6683

---

**From:** James Perkins
**Sent:** Wednesday, November 15, 2017 2:21 PM
**To:** 'Anthony Garza' <agarza@ccrglaw.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Agreed. Thanks for your efforts.

James R. Perkins
**BRAGALONE CONROY** PC
214.785.6683

---

**From:** Anthony Garza [mailto:agarza@ccrglaw.com]
**Sent:** Wednesday, November 15, 2017 2:19 PM
**To:** James Perkins <JPerkins@bcpc-law.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Everything is difficult. I wish there were an exception for documents that Hulu has a non-redacted version of, but I suppose that's life. We'll keep working.

Anthony M. Garza
Charhon Callahan Robson & Garza
(469) 587-7242

---

**From:** James Perkins [mailto:JPerkins@bcpc-law.com]
**Sent:** Wednesday, November 15, 2017 2:12 PM
**To:** Anthony Garza <agarza@ccrglaw.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Thanks, Anthony. Under the protective order, I am not allowed to share VIZIO's AEO-designated production with you. You would need to reach out to Rex on that.

James R. Perkins
**BRAGALONE CONROY** PC
214.785.6683

---

**From:** Anthony Garza [mailto:agarza@ccrglaw.com]
**Sent:** Wednesday, November 15, 2017 2:04 PM
**To:** James Perkins <JPerkins@bcpc-law.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>; Steven Callahan <scallahan@ccrglaw.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

James-

I don't have a response yet, but I'm working on it.

As an initial point, I'm having a hard time finding what VIZIO produced to you. Do you mind providing that? Thanks.

Anthony M. Garza
Charhon Callahan Robson & Garza
(469) 587-7242

---

**From:** James Perkins [mailto:JPerkins@bcpc-law.com]
**Sent:** Wednesday, November 15, 2017 1:59 PM
**To:** Anthony Garza <agarza@ccrglaw.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Anthony:

Just checking in to see if you have a response to my email below.

Thanks,

James R. Perkins
**BRAGALONE CONROY** PC
214.785.6683

---

**From:** James Perkins
**Sent:** Thursday, November 09, 2017 4:10 PM
**To:** 'Anthony Garza' <agarza@ccrglaw.com>
**Cc:** Patrick Conroy <pconroy@bcpc-law.com>
**Subject:** FW: WiLAN-VIZIO - VIZIO's Redactions

Anthony:

Please see Rex's email below. The documents are pretty heavily redacted, including information that appears relevant given the surrounding context. We would prefer fully unredacted versions, but if there are particularly sensitive social security numbers, bank account information, or the like in the documents, we are willing to work with you on an agreement to redact that information, assuming we do not need it for the case. The current redactions seem to go well beyond that type of information though. From Rex's email, it looks like you may already have copies of these agreements and the redactions. If not, let me know. I obviously cannot send you VIZIO's production, which is designated AEO, for you to see the specific redactions.

Please get back to me with any questions or comments.

Thanks,

James

**BRAGALONE CONROY** PC
James R. Perkins
214.785.6683

**From:** Rex Hwang [mailto:rhwang@glaserweil.com]
**Sent:** Thursday, November 09, 2017 1:29 PM
**To:** James Perkins <JPerkins@bcpc-law.com>
**Cc:** WiLan_VizioDefenseCounsel <WiLan_VizioDefenseCounsel@bcpc-law.com>; Patrick Conroy <pconroy@bcpc-law.com>; Monte Bond <MBond@bcpc-law.com>; Terry Saad <tsaad@bcpc-law.com>; Adrian Pruetz <apruetz@glaserweil.com>; Dan Liu <dliu@glaserweil.com>
**Subject:** RE: WiLAN-VIZIO - VIZIO's Redactions

Hi James, I believe the redactions that you are talking about were made at Hulu's request.  You should talk to Anthony Garza about removing those redactions.  It is my understanding that the redactions relate to payment and data-monitoring terms that have nothing to do with our case.

- Rex

---

**From:** James Perkins [mailto:JPerkins@bcpc-law.com]
**Sent:** Friday, November 3, 2017 1:40 PM
**To:** Rex Hwang
**Cc:** WiLan_VizioDefenseCounsel; Patrick Conroy; Monte Bond; Terry Saad
**Subject:** WiLAN-VIZIO - VIZIO's Redactions

Rex:

In our review of VIZIO's documents, it appears that information was improperly redacted. For example, the attached shows substantial redactions to a clearly relevant document. Please produce unredacted versions of any previously redacted documents, or provide us with specific justifications for any redactions with citations to specific Bates numbers and to legal authority. Please do so by Friday, November 10, 2017.

Regards,

James



**BRAGALONE CONROY** PC
**James R. Perkins**

2200 Ross Ave., Suite 4500W
Chase Tower
Dallas, TX  75201
Main:   214.785.6670
Direct:  214.785.6683
Email:  jperkins@bcpc-law.com
Web:    www.bcpc-law.com

**NOTICE OF CONFIDENTIALITY:**
The information contained in and transmitted with this e-mail may be subject to the Attorney-Client and Attorney Work Product privileges, and is Confidential.  It is intended only for the individuals or entities designated as recipients above.  You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in or transmitted with this e-mail by anyone other than the above addressee is unauthorized and strictly prohibited.  If you have received this e-mail in error, please notify the sender immediately.  Please destroy any e-mail erroneously transmitted to you.