IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-379 (LPS) |
| | ) | |
| SHARP ELECTRONICS CORPORATION, | ) | **REDACTED -- PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| WI-LAN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-788 (LPS) |
| | ) | |
| VIZIO, INC., | ) | **REDACTED -- PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Sharp Electronics Corporation*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3586
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*

November 30, 2018

# TABLE OF CONTENTS

Page(s)

I.      WI-LAN FAILED TO OBTAIN EVIDENCE TO PROVE INFRINGEMENT......... 3

    A.     Wi-LAN Relies On Statements From The SoC Declarations To Argue It Obtained The Necessary Code ............................................................................................. 3

    B.     The Statements That ███████████████████████ ██████████████ Are Inadmissible ........................................................................ 5

    C.     To The Extent SoC Declarations Are Considered, They Confirm Non-Infringement............................................................................................................ 6

II.     WI-LAN'S INFRINGEMENT ARGUMENTS DEPEND ON RE-WRITING THE CLAIM LANGUAGE AND THE COURT'S CONSTRUCTIONS............................. 7

    A.     Wi-LAN Does Not Dispute The Accused Televisions Do Not Correct For The Vertical Offset "Between Pairs Of Fields" ............................................................. 8

    B.     Wi-LAN's Response Confirms It Does Not Apply The Court's "Respective Buffers" Construction ........................................................................................... 10

    C.     Wi-LAN's Response Confirms It Ignores The Court's Construction That "Scaling" Requires "Changing The Vertical Resolution" ..................................... 13

    D.     The Evidence Wi-LAN Cites Confirms Wi-LAN Relies On The Same Process To Meet Both The "Scaling" And "Adjusting" Steps................................................. 15

III.    DEFENDANTS DO NOT DIRECTLY INFRINGE AS A MATTER OF LAW ...... 16

    A.     Wi-LAN's Reliance on *SiRF* Is Misplaced.......................................................... 16

    B.     Wi-LAN's Speculation That Defendants Perform "Testing" That Infringes The Claimed Method Is Insufficient ........................................................................... 19

    C.     Defendants' Sales Do Not Directly Infringe As A Matter Of Law ...................... 20

IV.     CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. Apple, Inc.*,
   78 F. Supp. 3d 952 (N.D. Cal. 2015) ...................................................................17

*Bristol v. Settle*,
   457 F. App'x 202 (3d Cir. 2012) .........................................................................3

*Chef Am., Inc. v. Lamb-Weston Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004)...........................................................................8

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   667 F. Supp. 2d 29 (D.D.C. 2009) .....................................................................20

*Crystaphrase Prod., Inc. v. Criterion Catalysts & Techs., LP*,
   2018 WL 4266237 (S.D. Tex. Sept. 6, 2018) ....................................................20

*Cuozzo Speed Techs., LLC v. Lee*,
   136 S. Ct. 2131 (2016)........................................................................................10

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
   442 F.3d 812 (3d Cir. 2006)................................................................................19

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
   424 F.3d 1276 (Fed. Cir. 2005)............................................................................3

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).....................................................................17, 18

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
   442 F.3d 1301 (Fed. Cir. 2006)..........................................................................19

*Ferring Pharm. Inc. v. Par Pharm., Inc.*,
   267 F. Supp. 3d 501 (D. Del. 2017)....................................................................11

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   607 F.3d 776 (Fed. Cir. 2010)..............................................................................8

*Jansen v. Rexall Sundown, Inc.*,
   342 F.3d 1329 (Fed. Cir. 2003)..........................................................................19

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC.*,
   695 F.3d 1322 (Fed. Cir. 2012)..........................................................................17

*Novartis Corp. v. Ben Venue Labs.*,
   271 F.3d 1043 (Fed. Cir. 2001)..........................................................................19

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)........................................................................20

*NTP Marble v. AAA Hellenic Marble*,
   2012 WL 13014714 (E.D. Pa. May 4, 2012) ...................................................5

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
   2015 WL 1246500 (M.D. Fla. Mar. 16, 2015) ...............................................17

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011)........................................................................15

*Ross v. City of Oakland*,
   2015 WL 4365309 (N.D. Cal. July 14, 2015)..............................................5, 6

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010).................................................2, 16, 17, 18

*Siskiyou Buckle Co. v. GameWear, Inc.*,
   2011 WL 5999869 (D. Or. Nov. 30, 2011).......................................................5

*Smith v. City of Allentown*,
   589 F.3d 684 (3d Cir. 2009)...............................................................................5

*SRI Int'l Inc. v. Internet Sec. Sys., Inc.*,
   647 F. Supp. 2d 323 (D. Del. 2009)................................................................20

*TIP Sys. v. Phillips & Brooks/Gladwin, Inc.*,
   529 F.3d 1364 (Fed. Cir. 2008)..........................................................................9

*TracBeam v. Google*,
   2014 WL 12600834 (E.D. Tex. May 9, 2014).................................................18

*Travel Sentry, Inc. v. Tropp*,
   497 Fed. Appx. 958 (Fed. Cir. 2012)........................................................17, 18

*Vehicle IP v. AT&T Mobility*,
   227 F. Supp. 3d 319 (D. Del. 2016)................................................................18

The parties do not dispute this case can and should be decided now. Wi-LAN's response confirms summary judgment of non-infringement is warranted for several independent reasons.

As a threshold matter, Wi-LAN tries to ignore the fact that, at best, it obtained only the most recent, 2017 version of code for each SoC, and suggests the Court should overlook its failure to obtain code that it can prove was actually used to manufacture each SoC. Obtaining code necessary to prove infringement is not a technicality, but a plaintiff's fundamental obligation that Wi-LAN simply failed to fulfill. Indeed, this Court ordered Wi-LAN to obtain the code years ago and Wi-LAN never did so. The uncontroverted evidence shows that Wi-LAN knew it needed to obtain all code versions and specifically discussed this need with the SoC manufacturers. When the SoC manufacturers refused, Wi-LAN sued them for patent infringement and coerced vague statements in exchange for avoiding costly litigation in the U.S. But these out-of-court statements Wi-LAN relies on in lieu of obtaining and analyzing all code versions, generically opining ████████████ ████████████████████████████, are not only insufficient to overcome Wi-LAN's failure of proof, they are inadmissible hearsay. Wi-LAN proffers no basis for admissibility, and does not dispute the SoC manufacturers will not attend trial. Absent the admissibility of such statements, Wi-LAN lacks the evidence to get to trial.

Separately, Wi-LAN's response shows that non-infringement can be resolved right now based on three independent bases that the parties agree only implicate claim construction issues. If the Court resolves even one of these disputes in Defendants' favor, it is undisputed the accused televisions do not infringe. Each of these disputes should be resolved in Defendants' favor, and this Court already rejected Wi-LAN's main arguments for two of the disputes. D.I. 439.[1]

---

[1] All citations are to *Wi-LAN Inc. v. Sharp Electronics Corp.*, 15-cv-379, unless otherwise noted, and are equally applicable to filings and reports in *Wi-LAN Inc. v. VIZIO, Inc.*, 15-cv-788. Citations to numbered exhibits (Ex. 1-82) refer to Defendants' exhibits filed with their summary judgment briefs.

*First*, claim 1 of the '654 patent expressly requires correction of a vertical offset between "pairs of fields." Wi-LAN, acknowledging that the accused televisions do not perform this correction, seeks to re-write the claim to recite a vertical offset between "fields." Wi-LAN justifies its revision by arguing that the predominant interlaced video standard has a vertical offset between "fields" and that the '654 patent must therefore have claimed it. But applying the unambiguous claim language, the accused televisions do not infringe because it is undisputed they do not correct a vertical offset between "pairs of fields."

*Second*, both of Wi-LAN's alternative infringement theories for the "respective buffers" limitation are based on Wi-LAN's rejected claim construction argument that storing fields in the ***same*** buffer satisfies this limitation so long as there is sufficient memory space to store both fields without overlapping. Wi-LAN admits in its response that it applied this construction, and justifies its approach by claiming, incorrectly, that Defendants somehow agreed with this interpretation at the *Markman* hearing. D.I. 445 at 13-14. Wi-LAN's argument is both inaccurate and inconsistent with the Court's *Markman* opinion, which Wi-LAN belatedly attempts to re-litigate. Wi-LAN's expert's testimony shows that Wi-LAN cannot prove each field is stored in separate buffers.

*Third*, Wi-LAN's infringement theory for the "scaling" limitation is likewise based on its disagreement with the Court's construction. The Court unequivocally agreed with Defendants that "scaling" requires, *inter alia*, "changing the vertical resolution" to avoid eviscerating the claim language. D.I. 280 at 8-10. There is no dispute that Wi-LAN's line-doubling "scaling" theory does not change the vertical resolution. The '654 patent and the *Keith Jack* text cited throughout say so.

Lastly, Wi-LAN's reliance on *SiRF* to assert that Defendants' sales *directly* infringe the asserted method claims cannot be sustained as a matter of law. Wi-LAN's "testing" theory is purely theoretical, and Wi-LAN failed to show a disputed material fact to avoid summary judgment.

## I.   WI-LAN FAILED TO OBTAIN EVIDENCE TO PROVE INFRINGEMENT

Wi-LAN does not dispute it must show that the code it obtained was used to manufacture the SoCs throughout the period for which it is seeking damages (2009-2017). Having failed to obtain the necessary evidence, Wi-LAN cannot show infringement as a matter of law.

### A.   Wi-LAN Relies On Statements From The SoC Declarations To Argue It Obtained The Necessary Code

Wi-LAN obtained only a single version of code from 2017 for each SOC model, and now attempts to downplay this critical deficiency with attorney argument at the tail end of its response. D.I. 24-30. But Wi-LAN's attorney argument—belied by a mountain of contrary evidence and admissions confirming Wi-LAN obtained only the "current" version of code—cannot manufacture a dispute to overcome summary judgment. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."). Whether Wi-LAN obtained the necessary code is an evidentiary issue that should be resolved on summary judgment. *See, e.g.*, *Bristol v. Settle*, 457 F. App'x 202, 204 (3d Cir. 2012).

Wi-LAN generically points to SoC declarations it obtained under dubious circumstances to argue that it obtained all code used to manufacture the SoCs from 2009-2017. D.I. 445 at 25-26. But these SoC declarations expressly list only a ***single*** ███████████████ for each SoC model, describing it as the ███████████████ D.I. 418 at 6-7; Ex. 40 ¶ 2; Ex. 38 ¶ 4; Ex. 41 ¶ 2. Wi-LAN argues in its response that there are no additional code versions (D.I. 445 at 27), but nowhere is this contradictory assumption stated (or even suggested) in these declarations or elsewhere. Rather, correspondence between Wi-LAN and the SoC manufacturers unambiguously shows ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████. Ex. 50 at 3 ████████████ ████████████████). *id.* at 2 ████████████████████



); *id.* at 1

).

When the SoC manufacturers refused to provide more than one version of code, Wi-LAN sued them for patent infringement to coerce statements that

. Ex. 50 at 3

); *id.* at 6 (same); Ex. 51 at 2

). Wi-LAN does not dispute the events leading to these coerced statements. The only evidence addressing the specific date of the code versions is its metadata produced by the SoC manufacturers, showing                              . Exs. 47, 48; Ex. 78. Yet Wi-LAN refuses to trust the metadata produced by the SoC manufacturers, underscoring the seriousness of Wi-LAN's deficiencies.

The only other evidence Wi-LAN cites to argue the code did not change after 2009 is

from *two* pages of code. The code produced by the SoC manufacturers in this case is voluminous, spanning *thousands* of pages—albeit for a single code version per SoC model. Wi-LAN ignores repeated statements in the code that

. *See, e.g.*, Ex. 79 (showing

); Ex. 80 (showing                              ). Moreover, these so-called

added by an unknown source.[2] It is undisputed that Wi-

---

[2] Defendants' expert explained that

. Ex. 69 ¶ 169; Ex. 73 at 491 (explaining the

. Indeed, there are visible inconsistencies in the few comments present.
*See, e.g.*, Ex. 79 (showing                              ).

LAN failed to obtain any change logs, file comparisons, or any other evidence of code revisions in this case. The unavoidable conclusion is that Wi-LAN obtained only a single version of code for each SOC model, and sought to cover this known deficiency by insisting the SoC manufacturers declare ███████████████████████████████████.

**B.    The Statements That** ███████████████████████████████
███████████████████████████ **Are Inadmissible**

Wi-LAN does not dispute its expert analyzed only a single code version for each SoC model and relied exclusively on the vague claim of ████████████████ to conclude that every other version of code created over an eight-year span operated that same way. Ex. 81 at 338. However, these statements are inadmissible hearsay, and cannot be relied on to avoid summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 694 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."); *Siskiyou Buckle Co. v. GameWear, Inc.*, 2011 WL 5999869, at *3 (D. Or. Nov. 30, 2011) (rejecting declaration statements as inadmissible hearsay). Critically, Wi-LAN proffers *no* basis to conclude these hearsay statements are admissible, and Wi-LAN does not dispute the SoC manufacturers will not attend trial.

Wi-LAN's attempts to distinguish the cases cited by Defendants confirms these hearsay statements are inadmissible. Wi-LAN attempts to distinguish *NTP Marble v. AAA Hellenic Marble*, 2012 WL 13014714 (E.D. Pa. May 4, 2012), by stating that the declarants in this case ███████████████
███████████████████████████████ D.I. 445 at 29. But that only confirms these declarations go well-beyond mere "authentication" declarations, as Wi-LAN previously characterized them. Here, the SoC manufacturers ████████████████████████████
███████████████████████████████. Ex. 50 at 3 █████████████
█████████████████████████████████████████████████████
██████████████████████████████); *id.* at 6 (same). Wi-LAN attempts to

distinguish *Ross v. City of Oakland*, 2015 WL 4365309 (N.D. Cal. July 14, 2015), by stating that the hearsay statements there lacked foundation and were uncorroborated. *Id.* But that is precisely the case here. No one has explained what was meant by ████████████████ these declarations were signed before the *Markman* proceedings in this case such that what was ████████ could not be gauged, and these statements contradict the SoC manufacturers' prior statements that ███████████ ████████████████████████████████████████████████████████ Ex. 50 at 3, 6.

Wi-LAN does not substantively dispute the evidence and cases Defendants presented showing that these declaration statements are wildly unreliable. As Defendants explained, ████ ████████████████████████████████████████████ . D.I. 418 at 5-14. Nor does Wi-LAN dispute that the veracity of these statements is undermined by its own experts, who testified that ████ ████████████████████████████████████████████ . *Id.* at 418 at 12-13.

### C.   To The Extent SoC Declarations Are Considered, They Confirm Non-Infringement

Wi-LAN argues that the SoC declarations it relies on should be considered because the declarants have ██████████████████████████████████████ . D.I. 445 at 28-29. But Wi-LAN ignores this point when it comes to adverse testimony verifying non-infringement from the very ***same*** declarants regarding ████████████████████████ . *See* Ex. 35 (MediaTek); Ex. 39 (MStar); Ex. 37 (Sigma). As Defendants' explained, the same SoC declarants provided additional declarations with key facts that unequivocally confirm the accused televisions do not infringe the asserted claims. D.I. 418 at 27-29. To the extent SoC declarations are admitted as evidence, these additional SoC declarations make it impossible for Wi-LAN to avoid

summary judgment of non-infringement.

For example, the same ███████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex. 35 ¶ 12. She

further confirmed that ██████████████████████████████████████████

████████████████████ *Id.* ¶ 13. And consistent with Wi-LAN's own expert's admissions, she

confirmed that █████████████████████████████████████ *Id.* This

very same ████████████████████████████████████████████

██████████████████. Ex. 35 ¶ 8 (████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ).

Wi-LAN's only proffered reason for disavowing these dispositive SoC declarations is an

inaccurate and unsupported insinuation that the ████████████████████████████

████████████████████████████████ D.I. 445 at 29. In reality, the record is

replete with evidence showing Wi-LAN threatening the SoC manufacturers and ████████████

████████████████████████████████████████.

## II.    WI-LAN'S INFRINGEMENT ARGUMENTS DEPEND ON RE-WRITING THE CLAIM LANGUAGE AND THE COURT'S CONSTRUCTIONS

Wi-LAN concedes that the evidence supporting Defendants' summary judgment arguments

"is not in dispute," and instead argues that "Defendants misapply the claim construction Order of the

Court." D.I. 445 at 8. The Court already rejected Wi-LAN's argument that Defendants' application

is inconsistent with the Court's constructions. D.I. 439. If the Court resolves any disputes below in

Defendants' favor, the accused televisions do not infringe and summary judgment should be granted.

**A.**   **Wi-LAN Does Not Dispute The Accused Televisions Do Not Correct For The Vertical Offset "Between Pairs Of Fields"**

Wi-LAN's response confirms that it must re-write the claim language to avoid non-infringement. Wi-LAN's infringement theory requires claim 1 to recite that there is a vertical offset "***between the fields***," rather than what claim 1 actually does recite, *i.e.*, a vertical offset "***between the pairs of fields***." *See* D.I. 418 at 14-18. Wi-LAN asks the Court to re-write claim 1 to cover "standardized interlaced video" because portions of the '654 patent specification describe certain standards and, according to Wi-LAN, it would be "illogical" for the claims to cover anything else. D.I. 445 at 8-9. Because Wi-LAN does not (and cannot) dispute the accused televisions do not support the claimed interlaced video format where each "pair of fields" is vertically offset relative to each other, Wi-LAN makes three arguments to try to avoid non-infringement.

*First*, Wi-LAN argues that Defendants' position is inconsistent with claim 1. D.I. 445 at 9-10. But it is Wi-LAN's position that is inconsistent with the unambiguous claim language. The claim means what it says: there is a "vertical offset ***between the pairs of fields***." Ex. 1, '654 patent, claim 1(c); *id.*, claim 1 (preamble) (requiring each "pair of fields" to be offset relative to each other). Wi-LAN offers no explanation why claim 1 should be re-drafted to cover "standardized interlaced video," rather than applying the plain claim language. *Chef Am., Inc. v. Lamb-Weston Inc.*, 358 F.3d 1371, 1373-74 (Fed. Cir. 2004); *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010).

In related briefing, Wi-LAN complained that Defendants read claim 1 to require that the "'vertical offset' is between 'pairs' of fields." D.I. 420 at 7. That is what claim 1 expressly recites. As Wi-LAN admits, the preamble defines the vertical offset as between "each ***pair*** of fields," not each field of a pair. D.I. 445 at 10. Wi-LAN suggests the preamble's use of "relative to each other" supports its position. But the preamble states that each "pair of fields" is offset relative to each other,

8

reinforcing Defendants' application. Moreover, Wi-LAN's argument the claim requires adjusting "one" field is irrelevant to the fact the claim defines an offset between "pairs of fields."

Wi-LAN also argues that descriptions in the '654 patent specification support its argument. D.I. 445 at 10. But examples in the specification cannot change what the claim language says, and a comparison between the claims and specification shows a key difference. *Compare* '654 patent, claim 1(c) ("… to substantially correct for the vertical ***offset between the pairs of fields***" *with* '654 patent at 6:10-11 ("… to correct the positional ***offset between the fields***"). As the '654 patent explains, in the specification the NTSC standard was "assumed for the sake of illustrative examples." '654 patent at 1:25-26; *id.* at 10:37-43 (specification should "be regarded in an illustrative rather than a restrictive sense; the invention is limited only by the provided claims."). It is axiomatic that claims do not automatically cover all examples recited in a specification. *TIP Sys. v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.").

*Second*, Wi-LAN incorrectly criticizes Figure 2 in Defendants' opening brief. D.I. 445 at 10-11. That illustration shows a simple example where each *pair* of fields is offset relative to an adjacent *pair* of fields by one-half of a field line spacing distance, consistent with claim 1. *See* D.I. 418 at Fig. 2. Whether the two vertically offset "pairs of fields" might be collectively referred to as "quads," or that a single field is offset relative to an adjacent field by one-quarter of a field because there are four fields in this example, is irrelevant. That the claimed format did not become part of any standard used in practice is evidence of what Wi-LAN's own engineer concluded about the 654 patent: ███████████████████████████████████ Ex. 49 at 1.

*Third*, Wi-LAN incorrectly argues that Defendants' expert analyzed claim 1 differently in a prior IPR. D.I. 445 at 11-12. In the IPR, neither the parties nor the Board addressed whether the

claim 1 preamble is limiting, and the IPR was governed by a broader claim construction standard and different evidentiary standards than here. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016). Even so, the technical background that Wi-LAN quotes from Dr. Reader's IPR declaration is consistent with his analysis, and says nothing about claim language. D.I. 445 at 11.

It is Wi-LAN's expert and engineers (not Defendants' expert), who have made critical admissions in this case that confirm non-infringement. Wi-LAN's expert admitted that ██████████ ███████████████████████████████████████████████████████ Ex. 23 at 303 ████████ ███████████████████████████████████████████████████████████████ ████████ ). That admission alone ends Wi-LAN's infringement case.

### B.   Wi-LAN's Response Confirms It Does Not Apply The Court's "Respective Buffers" Construction

In its response, Wi-LAN did not identify any facts disputing Defendants' showing that the accused televisions do not capture a first field and a second field into "respective buffers." Rather, Wi-LAN's response confirms that both of Wi-LAN's alternative infringement theories are based on Wi-LAN's rejected argument that the claim is satisfied by storing fields in the ***same*** buffer.

*First*, Wi-LAN attempts to re-litigate claim construction (D.I. 445 at 13-14), but the *Markman* proceedings firmly support Defendants' non-infringement position. Wi-LAN argues that it never asserted that capturing fields into a "single buffer" satisfies the "respective buffer" limitation. D.I. 445 at 13. The record shows otherwise. Throughout claim construction, Wi-LAN argued that the "respective buffers" limitation is satisfied by "one buffer" with separate memory spaces. 2/26/18 Tr. at 29:20-22 ("Our position is you don't need two separate buffers with two memories in them. You actually can have one buffer with enough memory to store both fields in them."); *see also* D.I. 280 at 7. The Court rejected Wi-LAN's argument and expressly agreed with Defendants that "a single buffer, despite having sufficient memory space to store both fields separately without overlap, is not

covered by the patent." D.I. 280 at 7-8.

Wi-LAN now attempts to re-write history, arguing that Defendants "agreed" with Wi-LAN's rejected construction. D.I. 445 at 13 ("Defendants agreed that 'separate buffers' merely required separate storage areas with sufficient memory to store both fields without overlapping."). As the Court already recognized, this is plainly incorrect. D.I. 439; *see* D.I. 391 at 2. Defendants expressly disputed that a single buffer with sufficient memory meets the claim limitation:

> MR. CUTRI: I think that leaves us with a dispute on that point that we just heard … I just heard quoted a few times during plaintiff's discussion that they acknowledge it had to be separate buffers within but repeatedly came back and said but it can be a single buffer … [I]t was not about device or space, it was we just need a single buffer with enough room for both fields. It only has to be a separate memory. And I think that is where the dispute is.

2/26/18 Tr. at 34:1-17; *see also id.* at 38:5-17. Wi-LAN's selective quotes from the *Markman* hearing merely show the Court and Defendants attempting to make sense of Wi-LAN's in-court statements, with Wi-LAN ultimately disagreeing that there was any meeting of the minds. *Id.* at 35:1-36:16 (THE COURT: "Is that what you were proposing?" MR. BOND: "No, Your Honor.").

Remarkably, Wi-LAN now admits that it is applying its rejected construction that a single buffer with sufficient memory meets the "respective buffers" limitation, stating in its response:

> Defendants agreed that "separate buffers" merely required separate storage areas with sufficient memory to store both fields without overlapping. **Wi-LAN applies this meaning of "separate buffers" consistent with what Defendants identified at claim construction**.

D.I. 445 at 13-14 (citations omitted). Wi-LAN cannot continue to apply its rejected construction under the guise that Defendants "agreed" with it. *See Ferring Pharm. Inc. v. Par Pharm., Inc.*, 267 F. Supp. 3d 501, 506 (D. Del. 2017) (refusing to allow party to apply rejected construction). The Court's *Markman* opinion is what unquestionably controls here.

*Second*, Wi-LAN repeats its unsupported argument that Defendants have added limitations to the claim. D.I. 445 at 14-15. The Court has already rejected Wi-LAN's argument that Defendants are

not applying the Court's construction for the term "respective buffers." D.I. 439. Wi-LAN's arguments are, once again, unsupported by any citation to the record. As Defendants explained, Wi-LAN's ▮▮▮▮▮▮ infringement theory depends upon storing portions of both a first field and a second field in the same buffer. D.I. 418 at 18-22. Wi-LAN does not dispute that ▮▮▮▮▮▮ do not capture *fields*, but rather ▮▮▮▮▮▮. Because the claim language does not support Wi-LAN's infringement theory, Wi-LAN's expert admitted he re-interpreted the claim to read ▮▮▮▮▮▮ Ex. 23 at 155-56 ▮▮▮▮▮▮ ▮▮▮▮▮▮ ).

Additionally, Wi-LAN cannot escape that its ▮▮▮▮▮▮ theory requires storing *both* fields in the *same* buffer. Wi-LAN does not dispute that ▮▮▮▮▮▮ ▮▮▮▮▮▮ as claim 1 requires, ▮▮▮▮▮▮. Instead, Wi-LAN argues that the claim permits re-using the same buffer for both a first and second field because "[n]othing in the claim requires … that the fields must remain stored in the respective buffers throughout 'the time that it takes to receive and display a pair of fields.'" D.I. 445 at 15. Using the same buffer to store portions of both a first and second field is plainly at odds with the Court's construction of "respective buffers" because, as the Court correctly explained, the patent teaches there must be "*two distinct buffers* for each of the two fields in the pair of fields." D.I. 280 at 7. Wi-LAN itself argued that piecemeal, sequential processing of fields through the same buffer(s) does not satisfies step 1(a) in its summary judgment motion for no invalidity. As one example, Wi-LAN argued the *Correa* prior art reference does not disclose "respective buffers" because video data is sequentially stored in the same two buffers. D.I 415 at 10.

*Third*, Wi-LAN argues that Defendants' position is inconsistent with one of its invalidity positions. D.I. 445 at 15-16 (comparing the accused products and Katsumata). Wi-LAN ignores this

invalidity position is presented in the alternative as consistent with Wi-LAN's infringement theory. *See* D.I. 444 at 7-8. It is Wi-LAN, not Defendants, who is taking inconsistent positions.

*Fourth*, Wi-LAN downplays its expert's deposition admissions and reverts to discussing its expert's report. D.I. 16-17. But this does not help Wi-LAN, as Wi-LAN's expert admitted to



Ex. 23 at 33; *see also id.* at 82, 91.

Wi-LAN does not dispute that its expert admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D.I. 418 at 19. Wi-LAN also does not dispute that its expert admitted ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. *Id.* at 19-20. Consequently, he was forced to concede that ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 19-20; Ex. 23 at 85 (▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮). Thus, Wi-LAN cannot show that the ▮▮▮ in Defendants' televisions contain the claimed "respective buffers." Indeed, this is the precise criticism Wi-LAN raised of prior art in its motion for summary judgment of no invalidity. Wi-LAN argued the *Ohara* prior art reference does not meet the "capturing" step because its "general disclosure" of "field and line buffers" does not show the specific configuration of the buffers. D.I. 415 at 3-4 (arguing "it is not enough that the disclosed buffers *could* be arranged as claimed").

### C.    Wi-LAN's Response Confirms It Ignores The Court's Construction That "Scaling" Requires "Changing The Vertical Resolution"

Wi-LAN's response confirms that Wi-LAN's "scaling" infringement theory is again based on

Wi-LAN's rejected construction and is entirely inconsistent with the Court's *Markman* opinion. Remarkably, Wi-LAN argues it has demonstrated "scaling" under Defendants' "originally proposed definition of the term." D.I. 445 at 20. That, of course, is insufficient. Wi-LAN must prove the accused televisions meet the claims as construed by this Court, and cannot do so.

Wi-LAN does not dispute the SoCs used in the accused televisions include . Nor does Wi-LAN dispute it failed to obtain and analyze . Instead, Wi-LAN contends the are "irrelevant." D.I. 445 at 20. But the SoC manufacturers have themselves made clear why Wi-LAN is wrong. Engineers from the SoC manufacturers explained that . Ex. 35 ¶¶ 5-9 (MediaTek); Ex. 33 ¶¶ 5-8 (MediaTek); Ex. 39 ¶¶ 5-6 (MStar); Ex. 37 ¶¶ 5-12 (Sigma). Wi-LAN's own example, deinterlacing from 1080i to 1080p, proves this point. Wi-LAN admits that in such case no vertical scaling would be required. D.I. 445 at 19. Thus, the SoC manufacturers explained the Ex. 35 ¶¶ 8-9 (MediaTek); Ex. 37 ¶¶ 9-10 (Sigma).

Faced with this failure of proof, Wi-LAN doubles down on its infringement theory that "line doubling" through deinterlacing constitutes "scaling." D.I. 445 at 18. Again, Wi-LAN's infringement theory is based entirely on its disagreement with the Court's construction. According to Wi-LAN, "scaling" requires only "changing by a constant factor the number of lines and/or pixels in a field." *Id.* But the Court unequivocally agreed with Defendants that "scaling" requires a ***change in vertical resolution*** to avoid eviscerating the claim language. D.I. 280 at 8-10.

As Defendants explained, *Keith Jack* and the '654 patent explain that line doubling through deinterlacing does not double the vertical resolution. D.I. 418 at 24. To compensate, Wi-LAN

attempts to dismiss the teachings of *Keith Jack* as "extrinsic evidence." D.I. 445 at 21. But it is black letter law that cited prior art is intrinsic evidence. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1230-31 (Fed. Cir. 2011) ("[P]rior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence."). And not only is *Keith Jack* intrinsic evidence, it is cited extensively throughout the '654 patent when discussing deinterlacing concepts, including for this very proposition. *See, e.g.*, Ex. 1,'654 patent at 2:26-30 ("Keith Jack refers to this when discussing 'Scan Line Duplication' and 'Scan Line Interpolation,' indicating that although the number of lines is doubled, the vertical resolution is not increased from the original data.").

Ultimately, Wi-LAN attempts to mask its own failure to follow the Court's construction by contending that Defendants impart a new meaning to "scaling," requiring a change in "spatial frequency content of an image." D.I. 445 at 20-21. The Court has already rejected Wi-LAN's mischaracterization of Defendants' position. D.I. 439. The Court's construction requires, *inter alia*, "changing the vertical resolution," and the '654 patent and *Keith Jack* explain that "line doubling" does not change the vertical resolution. Ex. 42 at 333; Ex. 1,'654 patent at 2:26-30.

### D. The Evidence Wi-LAN Cites Confirms Wi-LAN Relies On The Same Process To Meet Both The "Scaling" And "Adjusting" Steps

Wi-LAN attempts to evade the Court's "concurrently" construction by pointing to the same process to meet the "scaling" and "adjusting" steps. Wi-LAN does not dispute that it must identify two distinct processes in the accused televisions that perform "scaling" and "adjusting" in this case. Wi-LAN admits that its expert repeatedly described "scaling" and "adjusting as being met by the "same process," but attempts to excuse these admissions as "merely a summary statement." D.I. 445 at 23. Wi-LAN's arguments, and the evidence Wi-LAN relies on, confirm Wi-LAN's "summary statements" accurately describe Wi-LAN's position.

Wi-LAN contends the claimed "scaling" is met by ███████████████████████

███████████████████████████████████████████████████ *Id.* Wi-LAN then contends the

claimed "adjusting" is met by three functions: ████████████████████████████████

███████████████████████████████████ *Id.* These three functions, however, are

simply Wi-LAN's attempt to rephrase the same "scaling" process in different words. In fact, for each

function that Wi-LAN now asserts makes up the "adjusting" process, Wi-LAN identifies the same

code as the "scaling" process. *Compare* D.I. 409, Ex. C (Mirel Appx. 4) at 83-84 (citing

███████████████████████████████████) *with id.* at 87-88 (citing same for

"adjusting"); *compare id.* at 79 (citing ███████████████ for "scaling") *with id.* at 107 (citing same

for "adjusting"). Wi-LAN cannot assert that "scaling" and "adjusting" are one and the same.

## III.   DEFENDANTS DO NOT DIRECTLY INFRINGE AS A MATTER OF LAW

### A.   Wi-LAN's Reliance on *SiRF* Is Misplaced

Wi-LAN argues that Defendants directly infringe the asserted method claims based on their

customers' actions. As explained in Defendants' response to Wi-LAN's summary judgment motion

of infringement (where Wi-LAN cross-moved on this same issue), Defendants cannot directly

infringe because they do not perform any of the method steps, nor do they control the end-consumers

that purchase and use their televisions. D.I. 447 at 16-19.

Wi-LAN's reliance on *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed.

Cir. 2010) to assert direct infringement is misguided. In *SiRF*, defendant SiRF was an "end-to-end"

provider of GPS services. 601 F.3d at 1330. SiRF designed, manufactured, and sold chips that were

incorporated into end-user GPS devices and also provided GPS-related data from its servers to those

end-user devices. *Id.* at 1323-24. Every step in the asserted method claims was performed by SiRF

using servers in its physical possession and control, except for the claim's final step, which was

performed remotely using the defendant's GPS chip and software in the end-user device. *Id.* at 1323-

24, 1329-30. Only SiRF performed the claimed methods. *Id.* at 1331 ("Once the GPS receiver is

enabled and ready to process the data, *only SiRF's actions* are involved in 'processing' or 'representing' the data.") (emphasis added).

The Federal Circuit has made clear that *SiRF* "did not create direct infringement liability whenever an alleged infringer sells a product that is capable of executing the infringing method." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014). As explained in *Ericsson*, "none of [the Federal Circuit's] decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method." *Id.* There, the Federal Circuit concluded that *SiRF* was inapplicable because "all of the steps in the method in the claims 1 and 2 of the [patent-at-issue] are performed on the end product, *which is controlled by a third party*." *Id.* (emphasis added). Ericsson could "not point to any evidence in the record that D-Link performed the infringing steps, or that any of its customers were under its direction or control." *Id.*

Decisions following *Ericsson* confirm *SiRF* was limited to its facts. *See, e.g.*, *Adaptix, Inc. v. Apple, Inc.*, 78 F. Supp. 3d 952 (N.D. Cal. 2015); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, 2015 WL 1246500, at *7 (M.D. Fla. Mar. 16, 2015). In *Adaptix*, the court rejected a direct infringement claim, concluding that the relevant question is not whether the alleged infringer supplied a product that could perform each step, but rather whether a defendant supplying an accused product capable of performing at least one step "may be said to have performed or controlled any others." 78 F. Supp. 3d at 957. Where the answer is no, "there is no direct infringement." *Id*; *see also Matthews Int'l Corp. v. Biosafe Eng'g, LLC.*, 695 F.3d 1322, 1329 (Fed. Cir. 2012) ("Mathews has taken no steps toward direct infringement of those patents. Although it sells the Bio Cremation equipment it does not practice any of the methods disclosed in the Method Patents, and cannot, therefore, be held liable for direct infringement."); *Travel Sentry, Inc. v. Tropp*, 497 Fed. Appx. 958, 965 (Fed. Cir. 2012). Here, *SiRF* is inapplicable because a consumer is free to use the accused televisions in any

17

desired manner. Ex. 71 at 357. The user is free to select the input source, many of which are progressive signals that are never deinterlaced. Ex. 23 at 579. Even in instances where deinterlacing is performed, the SoC performs deinterlacing without any input from Defendants. *Id*. at 576-77, 580. Indeed, Defendants do not even have knowledge of or access to the deinterlacing methods performed on the accused televisions. D.I. 447 at 18-19; Ex. 71 at 427-29.

The cases relied on by Wi-LAN are inapposite. *Vehicle IP v. AT&T Mobility* involved a navigation system like the one found in *SiRF,* where performance of the method steps were split between the defendants and the end user. 227 F. Supp. 3d 319, 329 (D. Del. 2016). Moreover, the defendants actively communicated with and directed the actions of the accused devices once a navigation session began. *Id*. In *TracBeam v. Google*, which was decided before the Federal Circuit clarified its *SiRF* holding in its *Ericsson* decision, the defendant created the software that performed the method steps, and contractually prohibited third parties from modifying it. 2014 WL 12600834, at *2 (E.D. Tex. May 9, 2014). In contrast, Defendants did not create or manufacture any of the deinterlacing software or hardware used in the accused televisions.

Because the law does not support Wi-LAN's direct infringement claim, Wi-LAN resorts to arguing that (1) consumers use the accused televisions for their primary intended purpose, (2) consumers likely receive interlaced content, and (3) Defendants could not sell the accused televisions if they did not include deinterlacing functionality. D.I. 445 at 4. But none of these arguments is relevant. Any alleged evidence that the accused products are capable of performing the asserted method claims when used by consumers does not raise a disputed issue of material fact because it does not, and cannot, amount to direct infringement by Defendants. *Travel Sentry, Inc.*, 497 Fed. Appx. at 966 (affirming summary judgment of no direct infringement where Defendant did "not control or direct the performance of each step of the claimed method").

18

**B.     Wi-LAN's Speculation That Defendants Perform "Testing" That Infringes The Claimed Method Is Insufficient**

Wi-LAN misstates Defendants' burden to establish non-infringement. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *see also Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1307 (Fed. Cir. 2006). Here, Defendants' motion far exceeds its burden to show that Wi-LAN lacks evidence of direct infringement, and points to specific ways that Defendants do not perform the asserted method steps. D.I. 418 at 31-37. Thus, Wi-LAN was required to provide evidence of a dispute of material fact as to whether Defendants' directly infringe via "testing."

Despite having the burden of proof, Wi-LAN's response dismisses Defendants' arguments, generically citing its expert reports and asserting that Wi-LAN has "cited to considerable evidence and expert testimony," yet failing to identify even a *single* piece of evidence to establish a dispute of material fact. D.I. 445 at 6. In doing so, Wi-LAN asks this Court to wade through them and search for evidence that might raise a dispute of material fact. However, as detailed in Defendants' opening brief, Wi-LAN's expert reports themselves failed to identify any *evidence* that Defendants' employees actually practiced the claimed methods when performing the identified tests. The Court should reject Wi-LAN's invitation to scour the record, without specific guidance, to construct specific findings of fact. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("'Judges are not like pigs, hunting for truffles buried in' the record.").

Wi-LAN cannot show infringement based on a theoretical possibility that Defendants might have performed the claimed method. *See, e.g.*, *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334

19

(Fed. Cir. 2003). Wi-LAN suggest that circumstantial evidence may exist, but "the evidence must still indicate that infringement actually occurred. That is, a patentee must 'either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 336 (D. Del. 2009) (citations omitted). Here, Wi-LAN has failed to point to any specific instances of direct infringement, and cannot show the accused televisions necessarily infringe.

### C.   Defendants' Sales Do Not Directly Infringe As A Matter Of Law

It is black letter law that a method claim cannot be infringed by a product's sale. *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1318-21 (Fed. Cir. 2005). Wi-LAN challenges that well-established principle, relying on *CLS Bank Int'l v. Alice Corp. Pty. Ltd*., 667 F. Supp. 2d 29, 37 (D.D.C. 2009). But even in *CLS Bank* (a non-binding, out-of-circuit district court decision), that court did not state a broad proposition that method claims are always infringed by a product's sale. Rather, *CLS Bank* at most offers a narrow exception to the general rule, when the infringer sold or offered to sell its *performance* of all steps of the patented method. As courts have explained, "it is not the act of performing all of the steps of the method – as in 'use' cases – that results in infringement, it is the offer to sell or selling of *the transactional obligation to perform all steps of the method* that results in infringement." *Crystaphrase Prod., Inc. v. Criterion Catalysts & Techs., LP*, 2018 WL 4266237, at *4 (S.D. Tex. Sept. 6, 2018). Here, Wi-LAN does not (and cannot) claim that Defendants sell transactional obligations to perform all steps of the asserted claims, and there is no record evidence suggesting Defendants made these types of sales.

### IV.   CONCLUSION

For the foregoing reasons, Defendants request that the Court grant summary judgment of non-infringement.

20

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Stephen J. Kraftschik*

_____

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Sharp Electronics Corporation*


OF COUNSEL:

Gianni Cutri
Joel Merkin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Adam R. Alper
James Beard
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

November 30, 2018

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Pilar G. Kraman*

_____

Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3586
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*


OF COUNSEL:

Rex Hwang
Stanley M. Gibson
Jessica Newman
JEFFER MANGELS BUTLER & MITCHELL LLP,
1900 Avenue of the Stars, 7th Floor, Los
Angeles, California 90067
(310) 203-8080

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on December 7, 2018, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Brian E. Farnan
> Michael J. Farnan
> FARNAN LLP
> 919 N. Market Street, 12th Floor
> Wilmington, DE 19801
> *bfarnan@farnanlaw.com*
> *mfarnan@farnanlaw.com*
>
> *Attorneys for Plaintiff*

I further certify that on December 7, 2018, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following:

> Jeffrey R. Bragalone
> Patrick J. Conroy
> Monte M. Bond
> Terry A. Saad
> Nicholas C. Kliewer
> James R. Perkins
> Brian P. Herrmann
> BRAGALONE CONROY PC
> Chase Tower
> 2200 Ross Avenue, Suite 4500W
> Dallas Texas 75201-7924
> *jbragalone@bcpc-law.com*
> *pconroy@bcpc-law.com*
> *mbond@bcpc-law.com*
> *tsaad@bcpc-law.com*
> *nkliewer@bcpc-law.com*
> *jperkins@bcpc-law.com*
> *bherrmann@bcpc-law.com*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 */s/ Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*pkraman@ycst.com*

Dated: December 7, 2018                    *Attorneys for Defendant VIZIO, Inc.*