# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> SHARP ELECTRONICS CORPORATION, <br><br> Defendant. | Civil Action No. 15-00379-LPS[1] <br><br> FILED UNDER SEAL |
| WI-LAN INC., <br><br> Plaintiff, <br><br> v. <br><br> VIZIO, INC., <br><br> Defendant. | Civil Action No. 15-00788-LPS <br><br> FILED UNDER SEAL |

## WI-LAN'S OPENING SUPPLEMENTAL BRIEF

Dated: January 10, 2019

Monte M. Bond (admitted *pro hac vice*)
Jeffrey R. Bragalone (admitted *pro hac vice*)
Patrick J. Conroy (admitted *pro hac vice*)
Terry Saad. (admitted *pro hac vice*)
James R. Perkins (admitted *pro hac vice*)
BRAGALONE CONROY P.C.
Chase Tower, 2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
214-785-6670 Telephone
214-785-6680 Facsimile
mbond@bcpc-law.com
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
tsaad@bcpc-law.com
jperkins@bcpc-law.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Plaintiff
**Wi-LAN, INC**

---

[1] All docket citations are to Civil Action No. 15-00379-LPS, but apply equally to corresponding filings in Civil Action No. 15-00788-LPS.

**TABLE OF CONTENTS**

A. Both Sets of SoC Declarations Are Admissible for Purposes of Authentication and to Establish Hearsay Exceptions for the Source Code Evidence. ........................................... 1

    1. The SoC Declarations Are Admissible Under FRE 801(d)(2)(B) and 803(6)........ 1

    2. The Source Code Evidence Is Authenticated Under FRE 901(b) and 902(11). ..... 3

B. Wi-LAN Provided A Detailed Evidentiary Basis For Infringement Through Testing....... 6

C. Defendants Are the Only Possible Direct Infringer for the Accused Products.................. 8

D. The Court Should, and In Some Cases Is Required To, Resolve the Other Motions. ...... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
  2011 WL 1897322 (D. Del. May 19, 2011) .............................................................................. 6

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  667 F. Supp. 2d 29 (D.D.C. 2009) ........................................................................................ 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .............................................................................................. 9

*LG Display Co. v. AU Optronics Corp.*,
  265 F.R.D. 189 (D. Del. 2010) .......................................................................................... 4, 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .............................................................................................. 7

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
  61 F. Supp. 2d 199 (D. Del. 1999)
  *aff'd sub nom.,* 243 F.3d 1316 (Fed. Cir. 2001) .................................................................. 12

*Princeton Digital Image Corp. v. Office Depot Inc.*,
  2017 WL 3264068 (D. Del. Aug. 1, 2017) ............................................................................ 6

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
  553 U.S. 617 (2008) ............................................................................................................ 11

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) ............................................................................................ 10

*Vehicle IP, LLC v. AT&T Mobility LLC*,
  227 F. Supp. 3d 319 (D. Del. 2016) ...................................................................................... 7

Case 1:15-cv-00788-LPS   Document 405   Filed 01/17/19   Page 4 of 15 PageID #: 18791

*Vita-Mix Corp. v. Basic Holding, Inc.*,

    581 F.3d 1317 (Fed. Cir. 2009) .................................................................................................. 7

**Statutes**

FRE 703 .......................................................................................................................................... 5

FRE 801(d)(2)(B) ....................................................................................................................... 2, 3

FRE 803(6)(A-E) .................................................................................................................... 2, 3, 5

FRE 807 .......................................................................................................................................... 5

FRE 901(b) ..................................................................................................................................... 3

FRE 901(b)(1) ............................................................................................................................ 3, 4

FRE 901(b)(4) ............................................................................................................................ 3, 4

FRE 902 .......................................................................................................................................... 3

FRE 902(11) ............................................................................................................................... 2, 5

FRE 807 .......................................................................................................................................... 5

Wi-LAN submits this brief as requested by the Court's January 2, 2019 order. D.I. 470.

**A.  Both Sets of SoC Declarations Are Admissible for Purposes of Authentication and to Establish Hearsay Exceptions for the Source Code Evidence.**

**1.  The SoC Declarations Are Admissible Under FRE 801(d)(2)(B) and 803(6).**

Wi-LAN submitted a set of seven declarations from the SoC manufacturers for the purpose of establishing the admissibility, authenticity and reliability of the source code they produced. Defendants also submitted a set of declarations for the same purposes from four of the same declarants as Wi-LAN—K.T. Yang (MediaTek), A. Chang (MediaTek), Y.S. Lin (MStar) and M. Ignaszewski (Sigma Designs). Both the declarations submitted by Wi-LAN and by Defendants establish the admissibility of the source code evidence as "business records" under FRE 803(6)(A-E). The MediaTek Declarations of Yang (D.I. 446-13 and 423-35) and Chang (D.I. 446-10 and 423-33) include sworn testimony that: (1) they each ▇▇▇ and have ▇▇▇ (2) MediaTek ▇▇▇ (3) ▇▇▇ and (4) the ▇▇▇ Similarly, the MStar Declarations of Lin (D.I. 446-9 and 423-39) include sworn testimony that: (1) he is the ▇▇▇ (2) the ▇▇▇ (3) MStar ▇▇▇ and (4) ▇▇▇ And the Sigma Designs Declarations of Ignaszewski

1

and Martinalla (D.I. 446-11, 446-14, and 423-37) include sworn testimony that: (1) both Messrs. Martinalla and Ignaszewski have ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (2) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (3) the RTL code is kept ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and (4) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the chipsets in both VIZIO and Sharp branded televisions.

Because Defendants have relied on the SoC Declarations they submitted, including citing them as evidence in their motion for summary judgment and their expert reports on infringement, the statements of authenticity and admissibility in those declarations that mirror the statements in Wi-LAN's SoC Declarations are *not hearsay*. *See* FRE 801(d)(2)(B); *see also* D.I. 338 at 27-29;[2] *see, e.g.,* D.I. 449-69 at 69-70, 74, 80-81, 85, 90, 101, 108-109, 115, 121-122, 127, 134, 161-162, 164-165 (Expert Report of Dr. Reader citing Yang Decl.). Under FRE 801(d)(2)(B), Defendants have adopted these statements as true and therefore are precluded from now claiming them to be hearsay.[3] *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 538, n. 794 (S.D.N.Y. 2014) (submission of declaration in support of motion was an adoptive admission of the declaration).

Both sets of SoC Declarations establish that the source code evidence is a "business record" and therefore meets that exception to the hearsay rule. *See* FRE 803(6)(A-E). FRE 803(6)(D) explicitly allows for the use of a business records affidavit, such as the SoC Declarations, to certify and authenticate the business records under the requirements of FRE 902(11). Defendants ignore this when they claim the declarations are hearsay and inadmissible. Thus, even if the statements in

---

[2] The declarations submitted by Wi-LAN contain similar if not the same information relevant to the issues of admissibility and authentication and are, therefore, equally admissible.
[3] Wi-LAN has challenged only those portions of the declarations submitted by Defendants that purport to provide expert opinions on the issues of infringement. D.I. 382 at 3.

2

the SoC declarations were hearsay under FRE 801—which they are not because of Defendants' adoptive admission—they squarely fall within the allowable certification of "business records" exception under FRE 803(6). *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996) ("[T]he business records exception has been construed generously in favor of admissibility."). Because sworn testimony establishes the source code evidence as business records of each SoC manufacturer, FRE 803(6)(E) shifts the burden to Defendants to show that the "source of information or the method or circumstances of preparation indicate a lack of trustworthiness." But instead of showing the evidence to be untrustworthy, Defendants have proven the opposite by relying on the same declarants from the SoC manufacturers as a trusted source of information regarding the authenticity, admissibility, collection and operation of the source code evidence.

Defendants' eleventh-hour claim that Wi-LAN obtained its declarations through duress, calling into question their reliability, is unsupported by evidence, without merit, and immaterial. Even if true, which it is not, the admissibility and authenticity of the source code evidence is equally established by the declarations relied on by Defendants, whose "adoptive admission" establishes the source code evidence as reliable evidence of the operation of the accused products, and that it constitutes a "business record" under FRE 803(6).

### 2. The Source Code Evidence Is Authenticated Under FRE 901(b) and 902(11).

FRE 901(b) sets forth a non-exhaustive list of appropriate methods of authentication, including not only "[t]estimony that an item is what it is claimed to be" (FRE 901(b)(1)), but also "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" (FRE 901(b)(4)). Additionally, FRE 902 provides a list of documents that are "self-authenticating," including certified business records, as long as the adverse party is provided the certificate and given reasonable notice before trial. *United States v.*

*Browne*, 834 F.3d 403 , 433 (3rd Cir. 2016).

The SoC Declarations provide sworn testimony of witnesses with knowledge that establish the authenticity of the source code under FRE 901(b)(1). *See, e.g.*, D.I. 423-35 at ¶17 (testifying that the ███████████████████████████████████████████████ ███████████████████████████████████████ Further evidence of authenticity under FRE 901(b)(4) includes, but is not limited to, the source of the document, its appearance, content, substance, internal pattern, distinctive characteristics, and its age. *LG Display Co. v. AU Optronics Corp.,* 265 F.R.D. 189, 196–97 (D. Del. 2010). Here, the source code evidence was obtained directly from the SoC manufacturers, who are the originators and sole custodians of the source code. Defendants also relied on the SoC manufacturers as a source of this evidence.[4] Additionally, the source code evidence provides distinctive characteristics that establish its authenticity, including: (1) copyright designations that identify the date and author of the source code, (2) revision histories that describe the date and substance of changes made to the source code, (3) version numbers that uniquely identify a set of code or other chipset identification within the code, (4) function names and descriptions that provide identifying information for the source code modules, and (5) the parties experts agree it is written in a register transfer language (RTL) and the content provides the deinterlacing operations of the chipsets of the SoC manufacturers at issue. *See, e.g.,* D.I. 446-15. "The burden of proof for authentication is slight. All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *LG Display*, 265 F.3d at 196. The source code itself shows it is reliable and authentic under FRE 901(b)(4). Defendants offer no opposing evidence.

---

[4] Defendants went so far as to arrange a conference call between their expert, Dr. Reader, and the declarants of MediaTek for the purpose of educating Dr. Reader on the source code and the operation of the deinterlacing functionality in the accused products. D.I. 421-1 at 98:18-116:14.

4

Additionally, the declarations and source code are self-authenticating under FRE 902(11) as business records under FRE 803(6). Indeed, the very purpose of this rule is to allow authentication of records without the expensive and unnecessary need to produce a live witness. *See* FRE 902 Advisory Committee Notes at Paragraph (13). Here it is undisputed that the source code is maintained in electronic format and was made available to the parties for inspection and copying on a computer terminal at the offices of counsel for the SoC manufacturers. Both parties accessed the source code evidence and were permitted to print copies of the code. Moreover, Defendants relied on the same sources, declarants, and source code as Wi-LAN as definitive evidence of the operation and function of the accused products. And Defendants had ample notice and also interviewed and secured declarations of their own from the very same witnesses. FRE 902 (11).[5] The certification of the source code evidence in the declarations qualifies it under FRE 902(11) and FRE 803(b)(6). Thus, there is no "real challenge" to authenticity as directed by the Advisory Committee Notes.[6]

Finally, regardless of Defendants' challenges to the admissibility of the SoC Declarations, the declarations and source code evidence are the type of information that an expert "would reasonably rely on . . . in forming an opinion" under FRE 703. (The declarations "need not be admissible for the opinion to be admitted."). Thus, the declarations and source code evidence can

---

[5] Other evidence of authenticity includes: (1) the contractual obligation of MediaTek and MStar to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the SoCs at issue (D.I. 446-16 and 17); and (2) Defendants relied on the source code evidence in responding to interrogatories without questioning its authenticity or application in the accused products. *See, e.g.,* Ex. A at Resp. to Interrogatory 3.

[6] The substantial evidence of authenticity also qualifies the source code evidence as admissible under FRE 807, in part, because the declarations are "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts" and admitting these declarations "will best serve the purposes of these FREs and the interest of justice"—to resolve cases on the merits. FRE 807; *see also Abbott Labs. v. Lupin Ltd.*, No. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) ("Courts favor the resolution of disputes on their merits.").

still form the basis of Dr. Mirel's opinions and be presented to the jury under FRE 703 "if their value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *See, e.g., Princeton Digital Image Corp. v. Office Depot Inc.*, No. 13-239-LPS, 2017 WL 3264068, at *4 (D. Del. Aug. 1, 2017). There is no prejudice because Defendants interviewed and corresponded with the third-party SoC manufacturers regarding the source code and to secure their own declarations from them. For all of the above reasons, the source code evidence and SoC Declarations are authentic and admissible.

**B.      Wi-LAN Provided A Detailed Evidentiary Basis For Infringement Through Testing.**

Wi-LAN's technical expert reviewed the direct evidence provided by Defendants related to testing, and provided a detailed analysis to conclude that Defendants directly infringe through testing of the accused products. *See, e.g.,* D.I. 422-12 at 6-32; D.I. 422-13 at 6-33. Additionally, "[d]irect infringement can be proven by circumstantial evidence." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period."). Under the applicable standard, the Court will make all reasonable inferences in favor of Wi-LAN and will not make credibility determinations or weigh the evidence. *Vehicle IP, LLC v. AT&T Mobility LLC,* 227 F. Supp. 3d 319, 323 (D. Del. 2016). Wi-LAN's proof of direct infringement shows, at minimum, that both Defendants (1) tested the Accused Products in the United States during the relevant period; (2) tested the Accused Products by connecting interlaced video sources; and (3) the testing results in performance of the method in the asserted claims.

███████████████████████████████████████████ D.I. 422-12 at 6-32. The ███████████████ testing is performed by SEC when shipments of the accused televisions are received at its warehouse. *Id.*

Documents describing the incoming inspection tests show that the procedure included connecting all television inputs to a video source and confirming proper operation of the television for each input by at least visual inspection of the picture quality on the television display. *Id.* As Dr. Mirel explained, testing the coaxial, S-Video, and composite video inputs, at least one of which is present on all accused products, necessarily involved providing an interlaced video signal to the SEC Accused Product, causing performance of the patented method. *Id.*

The SEC initial inspection testing also included performing a channel scan procedure. *Id.* The channel scan is performed when the accused television receives a signal on the coaxial input, from either an over-the-air antenna or via a cable connection. *Id*. As a result, the channel scan involves receiving interlaced video signals from the broadcast channels which transmit only interlaced signals. *Id.* A subsequent step included a confirmation of each input to verify that video/audio is present and working properly. Dr. Mirel explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Other corroborating evidence includes: (1) inspection reports generated by SEC for the incoming inspections of the accused products, and (2) documents describing SEC's pre-production testing, which followed a similar procedure as the incoming inspection. D.I. 422-12 at 6-32. As Dr. Mirel explains, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

██████████████████████ *Id.*

Wi-LAN cited similar evidence and expert analysis demonstrating that VIZIO directly infringes by testing of the accused products. *See, e.g.,* D.I. 422-13 at 6-33. For example, VIZIO performs quality assurance testing of the accused products at a VIZIO facility in Irvine, California. *Id.* VIZIO's documents confirm that the testing required by VIZIO included verification that the infringing deinterlacing functionality in the accused products operates properly and displays accurate picture quality when provided an interlaced video signal (e.g., 480i or 1080i). *Id.* (citing VIZIO106325)██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ As Dr. Mirel testified, ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ *Id.* This evidence confirms that VIZIO directly infringes by performing the methods of the asserted claims during testing of the accused products, which is further corroborated by VIZIO's admission that the accused deinterlacing technology is so important to the accused televisions' operation that it could not sell any of the accused television without that functionality. *See, e.g.,* D.I. 422-8 at 104.

**C.     Defendants Are the Only Possible Direct Infringer for the Accused Products.**

It is fundamental that "[a] method claim is directly infringed when someone practices every step of the patented method." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014) (citations omitted). *SiRF* provides a legal construct to address situations in which a device, rather than a person, performs the steps of the claims. *SiRF Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319 (Fed. Cir. 2010) (direct infringement where (1) the method steps are automatically performed by the accused products as designed and sold by Defendants; (2) the claimed steps cannot be performed by a customer or end user of the accused televisions; and (3) the customer or

8

end user of the accused products cannot modify the infringing functionality). As in *SiRF*, here it is undisputed that "[t]his is not a situation where a method claim specifies performance of a step by a third party, or in which a third party actually performs some of the designated steps." *SiRF*, 601 F.3d at 1329. The Accused Products perform every step of the asserted claims as designed and sold by Defendants. The end user of the accused products does not, and *cannot*, perform any of the steps of the asserted claims—"capturing," "scaling," "adjusting," or "displaying." Each of these steps is performed internally within the television by the hardware and software components incorporated therein, and without any interaction from the end user. Thus, if *SiRF* is not applied to correctly attribute the direct infringement to Defendants, there is no direct infringer to whom the performance of these steps can be attributed. Defendants have neither identified an alternative infringer, nor produced evidence to show that the patented method is performed by someone else. In their responses to Wi-LAN's contention interrogatory on infringement, Defendants never alleged that they could not directly infringe the asserted claims because they are method claims. Ex. A. The Court should not allow Defendants to now assert otherwise.

A finding that there can be no direct infringer provides an unjust and prejudicial exemption for Defendants' infringement. *SiRF* serves the purpose of foreclosing such unintended results. Further, Defendants' incorporation of infringing technology into their products while claiming that they cannot be a direct infringer also conflicts with the Supreme Court's opinion in *Quanta Computer*. *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008). Under *Quanta*, the same set of facts would allow the exhaustion of patent rights without any direct infringement. As one court noted, that cannot be. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 667 F. Supp. 2d 29, 37 (D.D.C. 2009) ("If a method may be sold for exhaustion purposes, then the Court sees no persuasive reason why a method could not also be sold for infringement purposes."). Thus, a

9

finding that Defendants cannot directly infringe the asserted claims is inconsistent with prevailing Supreme Court precedent and fails all equitable standards.

### D.     The Court Should, and In Some Cases Is Required To, Resolve the Other Motions.

Regardless of the outcome on the respective motions on the issue of infringement, resolution of all pending motions is necessary to streamline the issues for trial, or alternatively, to provide a complete record for appeal.[7] *See, e.g.*, *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199, 242 (D. Del. 1999), *aff'd sub nom.,* 243 F.3d 1316 (Fed. Cir. 2001) ("In a case where the court is presented with patent validity and infringement issues, the Federal Circuit instructs that the court should decide both issues."). For example, if the Court grants Wi-LAN's motion for summary judgement of infringement, the issues of validity and damages still remain and must be addressed, both of which are implicated in the other pending summary judgement and *Daubert* motions. If, on the other hand, the Court grants Defendants' motion for summary judgement of non-infringement, SEC's counterclaim for declaratory judgment of invalidity is still implicated in Wi-LAN's motion for summary judgment of invalidity and Wi-LAN's *Daubert* motion of Dr. Reader. D.I. 17. Further, many issues raised in Wi-LAN's *Daubert* motion overlap with and are material to Wi-LAN's motions for summary judgment of infringement and validity and Defendants' motion for summary judgment of non-infringement. *See, e.g.,* D.I. D.I. 334, 337, and 339. Consideration of, and a ruling on, Wi-LAN's *Daubert* motion is necessary before any final outcome on the issue of infringement and validity. For instance, much of Defendants' motion for summary judgement of non-infringement is based on the opinions of Dr. Reader that are the subject of Wi-LAN's *Daubert* challenges to him. D.I. 344. Thus, a ruling on the issue of infringement, regardless of the outcome, does not render moot any of the other pending motions.

---

[7] If the Court grants Summary Judgment of Non-Infringement, the Court may not need to rule on Defendants' *Daubert* motions directed at Wi-LAN's damages experts. D.I. 330 and 332.

Dated: January 10, 2019
Respectfully submitted,

**FARNAN LLP**

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Monte M. Bond (admitted *pro hac vice*)
Jeffrey R. Bragalone (admitted *pro hac vice*)
Patrick J. Conroy (admitted *pro hac vice*)
Terry Saad. (admitted *pro hac vice*)
James R. Perkins (admitted *pro hac vice*)
**BRAGALONE CONROY P.C.**
Chase Tower,
2200 Ross Ave., Suite 4500W
Dallas, Texas 75201
214-785-6670 Telephone
214-785-6680 Facsimile
mbond@bcpc-law.com
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
tsaad@bcpc-law.com
jperkins@bcpc-law.com

Attorneys for Plaintiff
**Wi-LAN, INC**